## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**The Catholic Store, Inc. d/b/a Queen of Angels Catholic Bookstore,**

*Plaintiff,*

v.

**City of Jacksonville**,

*Defendant.*

Civil Action No:   3:23-cv-00192

**Plaintiff's Memorandum in Support of Motion for Preliminary Injunction**

*Oral Argument Requested*

# **Table of Contents**

Table of Authorities ............................................................... ii

Introduction ........................................................................ 1

Summary of Facts ................................................................. 2

Argument ........................................................................... 6

I.   The Privilege Clause violates the First Amendment because it compels Queen of Angels to speak and infringes its editorial judgment ............. 6

   A.   The Privilege Clause compels speech, forcing Queen of Angels to speak words it objects to................................................. 7

   B.   The Privilege Clause affects Queen of Angels' message about sex and gender identity...................................................... 11

II.  The Privilege Clause violates the First Amendment because it compels Queen of Angels' speech based on content and viewpoint .................... 14

III. The Denial and Unwelcome Clauses violate the First Amendment because they restrict speech based on content and viewpoint .............. 15

IV.  The Accommodation, Denial, and Unwelcome Clauses fail strict scrutiny as applied to Queen of Angels' expression ............................. 17

V.   The Unwelcome Clause facially violates the First and Fourteenth Amendments because it is overbroad and vague ................................... 21

Conclusion ........................................................................ 25

i

# Table of Authorities

## <u>Cases</u>

*303 Creative LLC v. Elenis*,
   6 F.4th 1160 (10th Cir. 2021) *cert. granted in part*, 142 S. Ct.
   1106 (2022) ............................................................................. 23

*44 Liquormart, Inc. v. Rhode Island*,
   517 U.S. 484 (1996) ................................................................ 20

*Adams by & through Kasper v. School Board of St. Johns County*,
   57 F.4th 719 (11th Cir. Dec. 30, 2022) ................................... 11

*Armstrong v. D.C. Public Library*,
   154 F. Supp. 2d 67 (D.D.C. 2001) ........................................... 24

*Ashcroft v. ACLU*,
   542 U.S. 656 (2004) ................................................................ 20

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963) .................................................................. 24

*Billups v. City of Charleston*,
   961 F.3d 673 (4th Cir. 2020) ................................................... 21

*Brown v. Entertainment Merchants Association*,
   564 U.S. 786 (2011) .......................................................... 19, 20

*Brush & Nib Studio, LC v. City of Phoenix*,
   418 P.3d 426 (Ariz. Ct. App. 2018) ......................................... 24

*Burns v. Town of Palm Beach*,
   999 F.3d 1317 (11th Cir. 2021) ................................................. 8

*Chelsey Nelson Photography, LLC v. Louisville/Jefferson County. Metro
   Government*, 2022 WL 3972873 (W.D. Ky. Aug. 30, 2022) ............. 16, 23

*City of Boerne v. Flores*,
   521 U.S. 507 (1997) ................................................................ 17

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
   6 F.4th 1247 (11th Cir. 2021) ........................................... 13, 18

*Doe v. City of New York*,
　　42 Misc. 3d 502 (N.Y. Sup. Ct. 2013) ..................................................... 10

*FEC v. Wisconsin Right To Life, Inc.*,
　　551 U.S. 449 (2007) ................................................................................. 18

*Fulton v. City of Philadelphia*,
　　141 S. Ct. 1868 (2021) .............................................................................. 18

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
　　515 U.S. 557 (1995) ....................................................................... 7, 18, 19

*Iancu v. Brunetti*,
　　139 S. Ct. 2294 (2019) .............................................................................. 15

*Janus v. Am. Federation of State, County & Municipal Employees*,
　　*Council 31*, 138 S. Ct. 2448 (2018) .................................................. 12, 23

*Kolender v. Lawson*,
　　461 U.S. 352 (1983) ................................................................................. 24

*Matal v. Tam*,
　　137 S. Ct. 1744 (2017) .............................................................................. 19

*McLendon v. Long*,
　　22 F.4th 1330 (11th Cir. 2022) ................................................................ 13

*Meriwether v. Hartop*,
　　992 F.3d 492 (6th Cir. 2021) ..................................... 4, 12, 13, 15, 20

*Miami Valley Fair Housing Center, Inc. v. Connor Group*,
　　725 F.3d 571 (6th Cir. 2013) .................................................................... 24

*National Institute of Family & Life Advocates v. Becerra*,
　　138 S. Ct. 2361 (2018) .............................................................................. 14

*NetChoice, LLC v. Attorney General, Florida*,
　　34 F.4th 1196 (11th Cir. 2022) ........................................................ 6, 7, 13

*Otto v. City of Boca Raton*,
　　981 F.3d 854 (11th Cir. 2020) ......................................................... 8, 14, 16

*Pacific Gas & Electric Company v. Public Utilities Commission of California* (*PG&E*),
      475 U.S. 1 (1986) ............................................................................ 7, 8

*Parsons v. City of Jacksonville*,
      295 So.3d 892 (Fla. Dist. Ct. App. 2020) .................................... 4

*People for Ethical Treatment of Animals, Inc. v. Shore Transit*,
      580 F. Supp. 3d 183 (D. Md. 2022) ............................................ 25

*Pittsburgh Press Company v. Pittsburgh Commission on Human Relations*,
      413 U.S. 376 (1973) ..................................................................... 16

*Prescott v. Rady Children's Hospital-San Diego*,
      265 F. Supp. 3d 1090 (S.D. Cal. 2017) ...................................... 10

*R.A.V. v. City of St. Pau.*,
      505 U.S. 377 (1992) ................................................................ 14, 15

*Reed v. Town of Gilbert*,
      576 U.S. 155 (2015) .......................................................... 14, 15, 17

*Riley v. National Federation of the Blind of North Carolina*,
      487 U.S. 781 (1988) ................................................................ 14, 20

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
      547 U.S. 47 (2006) ........................................................................ 7

*Saxe v. State College Area School District*,
      240 F.3d 200 (3d Cir. 2001) ....................................................... 24

*Smith v. University of Rochester Medical Center*,
      2017 WL 11428785 (W.D.N.Y. Dec. 28, 2017) ......................... 11

*Snyder v. Phelps*,
      562 U.S. 443 (2011) ..................................................................... 19

*Speech First, Inc. v. Cartwright*,
      32 F.4th 1110 (11th Cir. 2022) ....................................... 16, 23, 24

*Suntrust Bank v. Houghton Mifflin Company*,
      268 F.3d 1257 (11th Cir. 2001) .................................................... 6

iv

*Telescope Media Group v. Lucero (TMG),*
    936 F.3d 740 (8th Cir. 2019)......................................................................9

*United States v. Varner,*
    948 F.3d 250 (5th Cir. 2020)......................................................................5

*United States v. Williams,*
    553 U.S. 285 (2008)................................................................................ 22

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982).......................................................................... 24, 25

*West Virginia State Board of Education v. Barnette,*
    319 U.S. 624 (1943).......................................................................... 13, 14

*Wollschlaeger v. Governor, Florida,*
    848 F.3d 1293 (11th Cir. 2017)..................................................................8

*Wooley v. Maynard*, 430 U.S. 705 (1977) ...........................................................7

## **Statutes / Rules / Regulations**

42 U.S.C.A. § 2000e-2 ......................................................................... 21

42 U.S.C.A. § 3604 ............................................................................. 21

California Civil Code § 51................................................................... 10

Colorado Civil Rights Commission Rules & Regulations, 3 CCR 708–1,
R. 81.6 .............................................................................................. 10

D.C. Municipal Regulations. title 4, § 808 ......................................... 10

Jacksonville, Florida Code § 1.102(a) ..................................................9

Jacksonville, Florida Code § 402.103.................................................. 21

Jacksonville, Florida Code § 402.107(i) ......................................... 19, 21

Jacksonville, Florida Code § 402.201.................................................. 21

Jacksonville, Florida Code § 406.102.................................................. 17

Jacksonville, Florida Code § 406.103........................................................9

Jacksonville, Florida Code § 406.104........................................................9

Jacksonville, Florida Code § 406.104(h) ...................................................8

Jacksonville, Florida Code § 406.201(a) ......................................... 4, 8

Jacksonville, Florida Code § 406.201(b) ......................... 4, 16, 21, 22

Jacksonville, Florida Code § 406.302(a-f) .............................. 19

Jacksonville, Florida Code § 406.401........................................................4

Jacksonville, Florida Code § 406.405(b) ...................................................5

Jacksonville, Florida Code § 406.406........................................................4

Jacksonville, Florida Code § 406.409(b) ......................................... 4, 5

Jacksonville, Florida Code § 408.103......................................... 21

Jacksonville, Florida Code § 408.105(a) ...................................................4

Jacksonville, Florida Code § 408.201(a)(1).............................. 19

Jacksonville, Florida Ordinance 2017-16-E ................................ 3, 4

Jacksonville, Florida Ordinance 2020-244-E ..........................................4

N.Y. Exec. Law § 296(2)(a) .......................................................................9

## **Other Authorities**

Antonin Scalia & Bryan Garner, Reading Law: *The Interpretation of
      Legal Texts* 150 (Thompson/West 2012) ................................ 22

Brief of Twenty States as *Amici Curiae* in Support of Petitioners, *303
      Creative LLC v. Elenis*, No. 21-476 (U.S. June 2, 2022),
      https://bit.ly/3XL3dFg............................................................... 20

Cambridge, *Massachusetts Human Rights Commission Gender Identity
      & The Law: Public Accommodations Training*,
      https://bit.ly/3JB2P86 ............................................................... 10

Carol Sanger, *Feminism and Disciplinarity: The Curl of the Petals*, 27 Loy. L.A. L. Rev. 225, 268 (1993) ........................................................... 11

Caroline Kelly, *House Foreign Affairs leader tells Omar to apologize for saying pro-Israel groups push foreign allegiance*, CNN Politics (Mar. 2, 2019), https://www.cnn.com/2019/03/01/politics/ilhan-omar-engel-statement/index.html ............................................. 23

Chan Tov McNamarah, *Misgendering*, 109 Cal. L. Rev. 2227, 2257 (2021) ............................................................................................. 18

City and County of San Francisco Human Rights Commission, *Compliance Guidelines to Prohibit Identity Discrimination* (2003), https://bit.ly/40lNfDu ......................................................... 10

CNI Church News Ireland, *Mary McAleese condemns Catholic Church for 'intrinsically evil' teachings on homosexuality* (July 1, 2020), http://www.churchnewsireland.org/news/irish-uk-news/mary-mcaleese-condemns-catholic-church-for-intrinsically-evil-teachings-on-homosexuality/. .................................................... 23

Ethan Alter, *Gloria Steinem and Julie Taymor explain why the 'Karen' meme is sexist*, Yahoo (Sept. 30, 2020), https://www.yahoo.com/now/gloria-steinem-julie-taymor-karen-meme-sexist-162810020.html ................................................ 23

Eugene Volokh, *Bans on Political Discrimination in Places of Public Accommodation and Housing*, 15 N.Y.U. J.L. & Liberty 490 (2022) ................................................................................................. 13

Iowa Civil Rights Commission, *Sexual Orientation & Gender Identity 2* (2016), https://bit.ly/3AMfOPm ....................................................... 10

Karen Stoltznow, *Why is it so offensive to say 'all lives matter'?, The Conversation* (Jan. 13, 2001), https://theconversation.com/why-is-it-so-offensive-to-say-all-lives-matter-153188........................................ 23

Massachusetts Commission Against Discrimination Gender Identity Guidance (2016), https://bit.ly/3ji9IRd ................................................. 10

New Jersey Division on Civil Rights, *5 Things You Should Know about Protection from Discrimination and Harassment in Public Accommodations Based on Gender Identity or Expression* (2021), https://bit.ly/3QMwegz ............................................................................ 10

New York Division of Human Rights, *Guidance on Protections from Gender Identity Discrimination under the New York State Human Rights Law* 6–7 (2020), https://on.ny.gov/3A3b7k3 ............................... 10

New York Human Rights, *City Gender Identity/Gender Expression: Legal Enforcement Guidance*, https://bit.ly/3HLlr46 ............................ 10

National Conference of State Legislators, *State Public Accommodation Laws* (2021), https://bit.ly/3DnbEhT ........................................................ 20

U.S. Equal Employment Opportunity Commission, *Fact Sheet: Notable EEOC Litigation Regarding Title VII & Discrimination Based on Sexual Orientation and Gender Identity*, https://bit.ly/3RrIkwv. ......... 10

U.S. Equal Employment Opportunity Commission, *Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity* (2021), https://bit.ly/3bo7fk8 ........................................ 10

Vermont Human Rights Commission, *Sex, Sexual Orientation, and Gender Identity: A Guide to Vermont's Anti-Discrimination Law for Employers and Employees*, https://bit.ly/3WP2BgE ........................ 10

Washington State Human Rights Commission, *Sexual Orientation & Gender Identity Discrimination is Prohibited under Washington State Law* 2, https://bit.ly/3p5JyA8 ........................................................ 10

## Introduction

Across the country, federal agencies, states, and cities have banned gender-identity discrimination and required citizens to use pronouns reflecting others' gender-identity rather than biology. Plaintiff Queen of Angels Catholic Store is a Catholic bookstore that faces a similar law in Jacksonville. Although Queen of Angels sells everything to everyone no matter who they are, Jacksonville's public-accommodation law demands more. It compels the bookstore to speak pronouns and titles based on its customers' gender identity—thereby requiring the bookstore to prioritize self-professed identity over biological reality. That violates Queen of Angels' Catholic beliefs. And the First Amendment.

All this leaves Queen of Angels in a bind. On the one hand, Queen of Angels is a Catholic store. Everything it sells promotes the Catholic faith, from the Catholic Catechism to Pope Benedict's biography of Jesus. The bookstore walks the walk too. It posts about its Catholic beliefs on its website, and its employees pray with customers and answer questions about the faith. The bookstore speaks and lives out its convictions.

On the other hand, Jacksonville's law requires the bookstore to contradict one of these convictions—that God creates people male or female. Specifically, Jacksonville's law bans gender-identity discrimination by public accommodations and thereby requires the bookstore to use pronouns that

1

align with the customers' gender identity, not their biological sex. To make matters worse, the law also makes it illegal to publish something that customers subjectively interpret as making them feel "unwelcome" based on gender identity. This in turn makes it illegal for the bookstore to publish its policy of using biology-based pronouns or explain the religious reasons for this policy. Violate these rules and the bookstore faces investigations, cease-and-desist orders, uncapped fines, and unlimited damages.

But Queen of Angels should not have to continuously choose whether to violate the law or speak consistent with its Catholic beliefs. If the LGBT bookstore can speak and use pronouns consistent with its views about gender identity, Queen of Angels should have the same freedom. Everyone should. So Queen of Angels asks this Court for a preliminary injunction to stop the ongoing chill and violation of its First Amendment rights.

## Summary of Facts

Queen of Angels opened in 2003 to fulfill the biblical mandate to proclaim the Gospel. DeTrude Decl. ¶¶ 5, 15. It does this daily by providing Catholic goods and resources to the public. V.C ¶ 20; Prelim. Inj. App. 8–9. Christie DeTrude bought the bookstore in 2017, agreeing to maintain the bookstore's culture, customs, and goals. *Id*. ¶¶ 16–17. She has done this and more. The bookstore is now the foremost location in the Jacksonville area to find Catholic resources. DeTrude Decl. ¶¶ 18–20, 100.

The bookstore's religious mission also affects how it interacts with the community. For example, the bookstore solicits prayer requests from customers and shares them with priests and other employees to pray over. *Id.* ¶¶ 40–41; App. 9. One woman even converted to Catholicism after the staff prayed over her. *Id.* ¶ 42. And the bookstore serves every customer regardless of race, religion, sexual orientation, gender identity, or any other trait. *Id.* ¶ 66. Queen of Angels believes that God created all humans in His image, and the store treats everyone with dignity, respect, and love, including its customers who present transgender. *Id.* ¶¶ 52–53, 65–66. The bookstore even does this when customers want to argue about Catholicism, a common occurrence because the bookstore is so openly Catholic. *Id.* ¶ 25.

Like other businesses, Queen of Angels cannot speak messages it disagrees with. The bookstore believes that God created humankind as "male and female" and individuals cannot choose or change their sex. It cannot support a message suggesting sex is a preference. *Id.* ¶¶ 51, 54. That puts the bookstore at odds with Jacksonville law.

Jacksonville passed its public-accommodation law in 2004 but did not make gender identity a protected class until 2017. Jacksonville, Fla. Ord. 2017-16-E. Even then, Jacksonville did so improperly, prompting a lawsuit and state court decision in 2020 invalidating that addition. *Parsons v. City of Jacksonville*, 295 So.3d 892 (Fla. Dist. Ct. App. 2020). Jacksonville tried

again and finally updated its law in 2020. Jacksonville, Fla. Ord. 2020-244-E. Three parts of this law threaten the bookstore.

*First*, the Privilege Clause makes it unlawful to "refuse, withhold, deny … any services, access, advantages, goods … or privileges" because of gender identity. Jacksonville, Fla. Code ("Code") § 406.201(a). *Second*, the Denial Clause makes it unlawful to "publish" any "communication" to the effect that accommodations, services, or advantages will be "denied to a person" because of gender identity. *Id*. at § 406.201(b). *Third*, the Unwelcome Clause forbids any "communication" to the effect that the "patronage of such person is unwelcome, objectionable, or unacceptable" because of gender identity. *Id*. at § 406.201(b).

Jacksonville also makes these clauses easy to enforce. Almost anyone who claims to be "aggrieved" or suspects a violation can file a complaint against the bookstore, including members of the Jacksonville Human Rights Commission. *Cf. id.* at § 406.401 (allowing complaint by any "person aggrieved"); § 408.105(a) (defining "aggrieved person" someone who believes they "will be injured"); 406.406 (requiring City to evaluate whether violation of public-accommodation law "is about to occur"), 406.409(b) (allowing court to remedy violation that is "is about to occur"). Meanwhile, the law imposes severe penalties for violations, including cease-and-desist orders, uncapped

4

damage awards, and uncapped civil fines. *Id.* at §§ 406.405(b), 406.409(b). All this puts Queen of Angels in the crosshairs in four ways.

*First*, the bookstore only refers to customers using pronouns and titles that align with their biological sex, not their self-asserted gender identity. V.C. ¶¶ 83–88. This practice violates the Privilege Clause. Indeed, many other jurisdictions have understood bans on gender-identity discrimination to require pronoun usage consistent with gender identity, including titles like "ve" and "ver." *See United States v. Varner*, 948 F.3d 250, 256 (5th Cir. 2020); V.C. ¶¶ 103–23. This puts the bookstore at risk, particularly since it serves those who present as transgender. V.C. ¶ 89.

*Second*, in light of the ongoing national and state debate about gender identity, the bookstore wants to put its practice in writing (the pronoun policy) and distribute it to current and future employees. V.C. ¶¶ 96, 124–30. But this memorialization also violates the Privilege Clause. V.C. ¶¶ 142–47.

*Third*, the bookstore wants to explain its pronoun policy and its religious basis to its customers, both in a blog post on its website and in paper to customers in its store. V.C. ¶¶ 97–99; App. 23–27. This distribution violates both the Denial and the Unwelcome Clauses. V.C. ¶¶ 151–52.

*Fourth*, the bookstore wants to publish material that explains its Catholic beliefs about gender and sexuality more generally. V.C. ¶ 158. But

it can't discuss these fraught issues without potentially violating the Unwelcome Clause given its broad and vague language. V.C. ¶ 157.

Faced with this conflict, the bookstore operates in fear of Jacksonville law and refrains from memorializing or distributing its pronoun policy and explaining its beliefs, both online and in store. V.C. ¶¶ 156–59. Queen of Angels requests a preliminary injunction to protect it from these threats and to free it to speak messages it believes.

## Argument

For preliminary-injunction requests, courts consider the likelihood of success on the merits, whether plaintiffs suffer irreparable harm with no injunction, whether the equities tip in plaintiffs' favor, and whether an injunction will serve the public interest. *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). But in cases involving First Amendment violations like this one, likelihood of success is "generally the most important" factor. *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1209 (11th Cir. 2022) (cleaned up). Queen of Angels will focus on this factor since it will "effectively determine the result of this" motion. *Id.* at 1231.

## I.    The Privilege Clause violates the First Amendment because it compels Queen of Angels to speak and infringes its editorial judgment.

The First Amendment has long protected "the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705,

714 (1977). This means a speaker has "the autonomy to choose the content of his own message." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573 (1995); *see also NetChoice,* 34 F.4th at 1210 (affirming "private entity's choices about whether, to what extent, and in what manner it will disseminate speech" as right to "editorial judgments"). These rights originate in a speaker's "individual freedom of mind." *Wooley*, 430 U.S. at 714 (cleaned-up). Burdening this important freedom rightly triggers strict scrutiny. *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.* (*PG&E*), 475 U.S. 1, 19 (1986) (plurality) (applying this scrutiny).

Historically, the Supreme Court has evaluated compelled-speech claims by asking if there is protected speech and whether a compulsion affects the speaker's message. *See Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 64 (2006) (concluding that violations "resulted from interference with a speaker's desired message…); *Hurley*, 515 U.S. at 572–73 (concluding that parade was expressive and that public-accommodation law "alter[ed]" parade's "expressive content"). Jacksonville's law satisfies both factors.

### A.   The Privilege Clause compels speech, forcing Queen of Angels to speak words it objects to.

Jacksonville law forces Queen of Angels to use certain pronouns and titles when addressing its customers. That forces the bookstore to engage in protected speech it does not want to.

Start with protected speech. Queen of Angels interacts with customers using pronouns and titles, both verbally and in writing (email). DeTrude Decl. ¶¶ 66, 68. Engaging in the "spoken or written word" is protected speech. *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1336 (11th Cir. 2021); *Otto v. City of Boca Raton*, 981 F.3d 854, 865 (11th Cir. 2020) (verbal counseling protected speech because it "consists—entirely—of words.").

Nor does this conclusion change because the bookstore operates for profit or speaks in a commercial context. First Amendment protections don't disappear based on those things. *See PG&E*, 475 U.S. 19 (electric company); *Otto*, 981 F.3d at 865 (for-profit counselors); *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1307 (11th Cir. 2017) (paid doctors).

Next, the Privilege Clause forces the bookstore to use words— pronouns and titles—it does not want to. The Clause makes it illegal to "refuse, withhold or deny … any services, access, advantages, goods, facilities, or privileges" because of someone's gender identity, which includes their "gender-related … expression." Code §§ 406.201(a), 406.104(h). Thus, the law requires public accommodations to provide the exact same services, advantages, and privileges to all regardless of protected traits. *Cf. Telescope Media Grp. v. Lucero (TMG)*, 936 F.3d 740, 748–49, 750 n.2 (8th Cir. 2019) (interpreting law this way). Although the bookstore sells to everyone, it only uses biologically based pronouns and wants to formalize this practice in

writing. That means it arguably withholds services, advantages, and privileges based on gender identity and expression—providing the service, advantage, and privilege of using pronouns consistent with customers' sex, but not the same privilege of using pronouns consistent with customers' gender identity (their "gender-related expression").

Three reasons bolster this conclusion. *First*, the law requires a liberal interpretation to accomplish its purposes. Code § 1.102(a). And that purpose is broad: to "eliminate" all "discriminatory practices" (§ 406.103), also defined broadly to include any "distinction directly or indirectly against a person" because of gender identity (§ 406.104).

*Second*, other jurisdictions, courts, and scholars interpret similar language to compel preferred pronouns. For example, New York's public-accommodations law (like Jacksonville's) makes it illegal to "refuse, withhold from or deny to any person" any "accommodations, advantages, or facilities" based on "gender identity or expression." N.Y. Exec. Law § 296(2)(a). And New York admits that this covers "refusing to use an individual's requested name or pronouns."[1] Other states agree, like Iowa, Colorado, New Jersey,

---

[1] N.Y. Div. of Hum. Rts., *Guidance on Protections from Gender Identity Discrimination under the N.Y. State Hum. Rts. Law* 6–7 (2020), https://on.ny.gov/3A3b7k3.

Washington, California, Massachusetts, and Vermont.[2] Other jurisdictions

do too, like the District of Columbia, New York City, and San Francisco.[3]

Federal agencies concur. The EEOC and courts have interpreted

Title VII to force employees to use identity-based pronouns.[4] And the Biden

administration and courts have interpreted the discrimination ban in

Section 1557 of the Affordable Care Act to compel hospitals and doctors to

use patients' self-selected pronouns.[5]

---

[2] Wash. State Hum. Rts. Comm'n, *Sexual Orientation & Gender Identity Discrimination is Prohibited under Washington State Law* 2, https://bit.ly/3p5JyA8; Iowa C.R. Comm'n, *Sexual Orientation & Gender Identity* 2 (2016), https://bit.ly/3AMfOPm; U.S. Equal Employment Opportunity Commission, *Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity* (2021), https://bit.ly/3bo7fk8; N.J. Div. on C.R., *5 Things You Should Know about Protection from Discrimination and Harassment in Public Accommodations Based on Gender Identity or Expression* (2021), https://bit.ly/3QMwegz; Colo. C.R. Comm'n Rules & Regs., 3 CCR 708–1, R. 81.6, https://bit.ly/3An1nQq; Cal. Civ. Code § 51; *see Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1096–1099 (S.D. Cal. 2017) (interpreting Unruh Civil Rights Act to apply to compel preferred pronouns); Vermont Hum. Rts. Comm'n, Sex, *Sexual Orientation, and Gender Identity: A Guide to Vermont's Anti-Discrimination Law for Employers and Employees*, https://bit.ly/3WP2BgE; Mass. Comm'n Against Discrimination Gender Identity Guidance (2016), https://bit.ly/3ji9IRd.
[3] *See* N.Y. Hum. Rts., *City Gender Identity/Gender Expression: Legal Enforcement Guidance*, https://bit.ly/3HLlr46; *Doe v. City of New York*, 42 Misc. 3d 502, 504 (N.Y. Sup. Ct. 2013) (holding that failing to use preferred pronouns violates State of New York and New York City law). *See also* D.C. Mun. Regs. tit. 4, § 808; City and County of San Francisco Hum. Rts. Comm'n, *Compliance Guidelines to Prohibit Identity Discrimination* (2003), https://bit.ly/40lNfDu; *see also* Cambridge, *Mass. Hum. Rts. Comm'n, Gender Identity & The Law: Public Accommodations Training*, https://bit.ly/3JB2P86.
[4] U.S. Equal Employment Opportunity Commission, *Fact Sheet: Notable EEOC Litigation Regarding Title VII & Discrimination Based on Sexual Orientation and Gender Identity*, https://bit.ly/3RrIkwv.
[5] *See, e.g.*, *Prescott*, 265 F. Supp. 3d at 1099–1100  (interpreting non-discrimination provision of Affordable Care Act to require medical provider to use preferred pronouns); *Smith v. Univ. of Rochester Med. Ctr.*, No. 17-cv-6781-CJS, 2017 WL 11428785, at *3–4 (W.D.N.Y. Dec. 28, 2017) (same).

*Third*, Jacksonville interprets its law the same way. Before filing this lawsuit, the bookstore asked Jacksonville to disavow applying its law to compel pronouns. Frampton Decl. ¶ 4. Jacksonville refused. *Id.* at ¶ 5. Put these factors together and the Privilege Clause forces Queen of Angels to use pronouns and titles based on gender identity, not biological sex.

### B. The Privilege Clause affects Queen of Angels' message about sex and gender identity.

By forcing Queen of Angels to use particular pronouns and titles, the Privilege Clause reshapes Queen of Angels' mission and message—from speaking one view (biological realism) to speaking an opposing one (gender-identity ideology).

Pronouns "convey a powerful message implicating a sensitive topic of public concern"—gender identity. *Meriwether v. Hartop*, 992 F.3d 492, 508 (6th Cir. 2021); *cf. Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 719, 798 (11th Cir. Dec. 30, 2022) (en banc) (noting gender identity is a controversial topic).

This has always been true. In the 1990s, for example, the feminist movement opposed generic masculine pronouns as a "mechanism for the conceptual invisibility of women."[6] Today, people use pronouns "to validate—or invalidate—someone's perceived sex or gender identity." *Meriwether*, 992

---

[6] Carol Sanger, *Feminism and Disciplinarity: The Curl of the Petals*, 27 Loy. L.A. L. Rev. 225, 268 (1993).

F.3d at 509. From spoken conversation to email signatures, "the use of gender-specific titles and pronouns has produced a passionate political and social debate." *Id*. at 508.

Queen of Angels wishes to take a side in this debate, using pronouns and titles consistent with customers' sex. In doing so, the bookstore affirms its Catholic beliefs that biology matters and that people should act, speak, and identify with their God-given sex. That "advance[s] a viewpoint on gender identity." *Id*. at 509.

But Jacksonville's law tries to force the store to affirm a different view—that gender identity trumps biological reality and that people should sometimes act and identify contrary to their sex. This "violates" a "cardinal constitutional command"—forcing Queen of Angels "to mouth support for views [it] find[s] objectionable." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018).

The Sixth Circuit confirmed this conclusion in *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021). There, a university forced a professor to use students' chosen pronouns even if contrary to their biological sex. *Id*. at 498. The professor objected because of his "conviction that one's sex cannot be changed." *Id*. at 508. The university disciplined him, the professor sued, and the Sixth Circuit found a plausible First Amendment violation. *Id*. at 510. Compelling the pronouns compelled speech, forcing the professor to speak a

12

view he opposed. *Id.* at 506–07. Jacksonville tries the same here—to compel Queen of Angels to use language to profess an ideology it opposes.

The Eleventh Circuit has found compelled speech based on much less. Here, the government cannot force sex offenders to post yard signs saying "No trick or treat," *McLendon v. Long,* 22 F.4th 1330, 1332 (11th Cir. 2022); tech companies to host politicians' social-media posts, *NetChoice*, 34 F.4th at 1212; or Amazon to fund groups it disagrees with. *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247 (11th Cir. 2021). If each of these regulations compelled speech and infringed on editorial discretion, then forcing a Catholic bookstore to mouth words against one of its core convictions on a topic of immense national debate does too.

And this result makes sense. Otherwise, a city could "prohibit" stores from addressing customers "by their preferred gender pronouns." *Meriwether*, 992 F.3d at 506. Or what if a religious customer demanded the title "Holy Prophet," invoking religious-discrimination laws to compel the speech of an atheist business owner? Or a KKK member demanded the title "Führer," citing laws against political-ideology discrimination?[7] Thankfully, the First Amendment "was designed to avoid these ends by avoiding these beginnings." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 641 (1943).

---

[7] Eugene Volokh, *Bans on Political Discrimination in Places of Public Accommodation and Housing*, 15 N.Y.U. J.L. & Liberty 490 (2022) (identifying at least 19 jurisdictions with these laws).

13

In our pluralistic society, the First Amendment protects *everyone's* free speech, Queen of Angels' included.

## II.    The Privilege Clause violates the First Amendment because it compels Queen of Angels' speech based on content and viewpoint.

Although Queen of Angels satisfies the test for compelled speech, the Privilege Clause goes further and compels speech based on content and viewpoint. This independently triggers strict scrutiny. *Otto*, 981 F.3d at 861 (applying this scrutiny for content and viewpoint-based regulations).

A regulation is content based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163–65 (2015). When applied to compel preferred pronouns and titles, the Privilege Clause fails this test in two ways.

For one, the law compels Queen of Angels to use pronouns, altering the content of its desired speech. "Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech. We therefore consider the Act as a content-based regulation of speech." *Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 795 (1988); *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (same).

For another, the Clause takes a position on an ongoing public debate, allowing one side to use its preferred language and "fight freestyle, while requiring the other to follow Marquis of Queensberry rules." *R.A.V. v. City of*

*St. Paul.*, 505 U.S. 377, 392 (1992). Such favoritism extends beyond content

discrimination to embrace viewpoint discrimination—"disapprov[ing] a

subset of messages [found] offensive." *Iancu v. Brunetti*, 139 S. Ct. 2294,

2299 (2019). Here, Jacksonville permits some pronouns, not others, only

banning those uniformly consistent with biology. That prohibition turns

completely on the views conveyed by those pronouns. *See Meriwether*, 992

F.3d at 507 (pronoun requirement forced professor "to avoid controversial

viewpoints altogether in deference to a state-mandated orthodoxy.").

**III.    The Denial and Unwelcome Clauses violate the First
Amendment because they restrict speech based on content and
viewpoint.**

Along with *compelling* speech based on content and viewpoint,

Jacksonville's law also *restricts* speech based on content and viewpoint.

To evaluate speech restrictions, courts use a two-step test. First, a law

is content based if "on its face [it] draws distinctions based on the message a

speaker conveys." *Reed*, 576 U.S. at 163–64 (2015). Second, a facially neutral

law may still regulate content if it cannot be "justified without reference to

the content of the regulated speech," or if the government adopted the law

because it disagrees with the speaker's message. *Id.* (cleaned up).

The Denial and Unwelcome Clauses fail both requirements. In fact,

these clauses go beyond content to target particular views. Start facially.

These clauses make it unlawful to "publish" any "communication … to the

15

effect that" (1) accommodations, services, and advantages will be "denied to a person" or (2) that a person's patronage "is unwelcome, objectionable, or unacceptable" because of gender identity. § 406.201(b). Both clauses explicitly ban speech based on the view espoused. Stores can post statements saying they happily use preferred pronouns; stores cannot post statements refusing to do so. It all turns on content and view. *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1125 (11th Cir. 2022) (anti-discrimination policy content and viewpoint-based by restricting "verbal acts" and "written statements" "about any of a long list of characteristics"). *Cf. Otto*, 981 F.3d at 863 (ban against therapy seeking to change sexual orientation was content based because it "depends only on the content of the words used in that therapy" and was viewpoint based by "codify[ing] a particular viewpoint" about sexual orientation); *Chelsey Nelson Photography, LLC v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:19-cv-851-BJB, 2022 WL 3972873, at *25 (W.D. Ky. Aug. 30, 2022) (saying similar provisions were "plainly a restriction on speech based on its content and viewpoint.").[8]

The application to the bookstore's desired speech bears this out. Queen of Angels wants to distribute a statement online and in store that explains

---

[8] Although the Denial Clause facially regulates speech based on content and viewpoint, some applications may still be permissible if applied to statements expressing an intent to engage in illegal and *constitutionally unprotected* activity. *See Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 377 (1973). But the bookstore's blog post expresses a desire to engage in constitutionally protected activity.

its inability to use certain pronouns and its religious reasons for this policy. V.C. ¶ 150. But this statement arguably declines to provide accommodations, services, and advantages based on gender expression—declining to use pronouns based on gender identity when selling books to customers. And the statement arguably suggests that someone who wants these pronouns is "unwelcome, objectionable, or unacceptable" because of their gender expression. But again, everything turns on the content and viewpoint of the bookstore's statement. The clauses allow Queen of Angels to post a statement supporting its use of gender-fluid pronouns, just not its refusal to do so—favoring one view in the debate over gender identity.

## IV. The Accommodation, Denial, and Unwelcome Clauses fail strict scrutiny as applied to Queen of Angels' expression.

As noted above, laws like Jacksonville's that compel or restrict speech based on content or viewpoint trigger at least strict scrutiny—"the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 509 (1997). To survive this, Jacksonville must prove that applying its law to Queen of Angels is narrowly tailored to serve a compelling interest. *Reed*, 135 S. Ct. at 2226. Jacksonville can do neither.

*Compelling interest*: Jacksonville's law seeks to ensure "access to public accommodations for all people within the City...." Code § 406.102. While that interest may be compelling in general, it sets the "level of generality" too high; the City must show a compelling interest "in denying an

17

exception" to the bookstore. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021). It cannot. The bookstore does not discriminate but sells its books to everyone. V.C. ¶ 79. And many other bookstores nearby use pronouns Queen of Angels cannot. V.C. ¶¶ 199–203. So forcing the bookstore to use certain pronouns or to restrict its speech does not further any access interest. That's fatal. *See FEC v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 477–78 (2007) ("A court applying strict scrutiny must ensure that a compelling interest supports each application of a statute restricting speech."); *Coral Ridge*, 6 F.4th at 1256 (applying public-accommodation law to expression did not further law's purpose).

As a fallback, the City might propose a need to protect people from affront to their dignity when someone does not use their preferred pronouns.[9] But that "is a decidedly fatal objective." *Hurley*, 515 U.S. at 579 (public-accommodations law applied "to produce thoughts and statements acceptable to some groups … grates on the First Amendment…"). Reducing dignity harm never justifies compelling or restricting speech. "[T]he point of all speech protection … is to shield just those choices of content that in someone's eyes are … hurtful." *Id* at 574. This is "the proudest boast of our free speech jurisprudence…." *Matal v. Tam*, 137 S. Ct. 1744, 1764 (2017);

---

[9] *See* Chan Tov McNamarah, *Misgendering*, 109 Cal. L. Rev. 2227, 2257 (2021).

*Snyder v. Phelps*, 562 U.S. 443, 458 (2011) (law could not ban anti-LGBT speech "simply because it is upsetting or arouses contempt.").

Beyond that, Jacksonville's law has several exemptions undermining any dignity interest. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 802 (2011) ("Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes…"). For one, the law exempts public accommodations that are private clubs, religious organizations, theaters engaged in age discrimination, and entities providing single-sex spaces. § 406.302(a-f). But if Jacksonville can allow these places to bar the door to protected classes without undermining its dignity goals, it can protect Queen of Angels' right to speak consistent with its conscience.

Outside the public-accommodation space things get worse for Jacksonville. There, the City exempts numerous activities that inflict massive dignity harm—from employment discrimination by small employers to single family homeowners discriminating in private home sales. *Id.* at §§ 402.107(i); 408.201(a)(1). Again, these acts of *discriminatory conduct* cause much more dignity harm than Queen of Angels' speech. By failing to regulate the former, the city undermines any need to regulate the latter. *See Brown*, 564 U.S. at 802 (failure to regulate violence in books, cartoons, and movies undermined law restricting violent video games).

19

*Narrow Tailoring*: For narrow tailoring, Jacksonville must prove that regulating Queen of Angels is "the least restrictive means among available, effective alternatives." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004). But Jacksonville fails this test since it has many better ways to achieve any legitimate goals rather than regulate Queen of Angels' speech.

First, Jacksonville could compel the provision of goods and services rather than compel pronouns and restrict speech. The bookstore already does this. V.C. ¶ 79. And many state laws follow this pattern.[10]

Second, Jacksonville could exempt businesses that use customers' preferred names or last names if the store won't use their pronouns or titles. *Cf. Meriwether*, 992 F.3d at 511 (teacher would use last names for students, but not pronouns). Again, the bookstore already does this. V.C. ¶ 88.

Third, the City could use pronouns based on gender-identity and hold educational campaigns promoting this practice. After all, the best response to speech you disagree with is more speech, not censorship. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 507 (1996) (citing "educational campaign" as alternative); *Riley*, 487 U.S. at 800 (state can "communicate the desired information to the public" rather than compel

---

[10] Nat'l Conf. of State Legis., *State Public Accommodation Laws* (2021), https://bit.ly/3DnbEhT (26 state public accommodation laws do not cover gender identity); Br. of Twenty States as *Amici Curiae* in Supp. of Pets., *303 Creative LLC v. Elenis*, No. 21-476 (U.S. June 2, 2022), https://bit.ly/3XL3dFg (interpreting their public-accommodation laws to not compel speech).

speech); *Billups v. City of Charleston*, 961 F.3d 673, 689–90 (4th Cir. 2020) (voluntary certification program better than restricting tour guides' speech).

Fourth, Jacksonville could simply exclude small businesses from its definition of public accommodation. The city has already done this in its employment law, excluding businesses with fewer than 15 employees. § 402.107(i); *see* § 402.201.

Fifth, as for the Unwelcome Clause, Jacksonville could just ban statements refusing to provide an actual service (rather than statements about pronouns). Title VII and the FHA do this without any type of Unwelcome Clause. *See* 42 U.S.C.A. § 2000e-2; 42 U.S.C.A. § 3604. Not even Jacksonville thinks this Clause necessary. Its employment or housing provisions have no Unwelcome Clause. §§ 402.103; 408.103.

## V. The Unwelcome Clause facially violates the First and Fourteenth Amendments because it is overbroad and vague.

The Unwelcome Clause has facially problematic language, making it illegal to "publish, circulate, issue, display, post or mail any communication … to the effect that … the patronage of such person is unwelcome, objectionable, or unacceptable" because of various protected traits. Code § 406.201(b). This language is overbroad and vague.

*Overbreadth*: The first step in an overbreadth challenge "is to construe the challenged statute." *United States v. Williams*, 553 U.S. 285, 293 (2008). To do so, one must see how the Denial and Unwelcome Clauses work

together. The former prohibits any communication "to the effect that accommodations, services … [or] advantages" are "denied to a person" because of gender identity. § 406.201(b). Thus, it forbids statements indicating that a store will not provide the same accommodations, services, or advantages regardless of protected trait. *Id*. In other words, the Denial Clause forbids actual and constructive denials.

The Unwelcome Clause must do something more. Under basic statutory rules, texts must be construed as a whole, giving each provision effect.[11] No provision should be read to "duplicate another provision" or "have no consequences."[12]

So the Unwelcome Clause logically must go beyond mere denials and prohibit any statement that someone perceives to suggest their patronage is unwelcome, objectionable, or unacceptable because of a protected trait. But that covers almost any critical utterance related to any protected trait. Criticizing the influence of the America Israel Public Affairs Committee may bring charges of antisemitism.[13] Quoting the Catholic Catechism's language that "homosexual acts are intrinsically disordered" may bring charges of

---

[11] Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts,* 150 (Thompson/West 2012).

[12] *Id.*

[13] *See* Caroline Kelly, *House Foreign Affairs leader tells Omar to apologize for saying pro-Israel groups push foreign allegiance*, CNN Politics (Mar. 2, 2019), https://www.cnn.com/2019/03/01/politics/ilhan-omar-engel-statement/index.html.

homophobia.[14] Saying "All Lives Matter" may bring charges of racism,[15] and

posting a popular "Karen" meme may bring charges of sexism.[16] *See 303*

*Creative LLC v. Elenis*, 6 F.4th 1160, 1214 (10th Cir. 2021), *cert. granted in*

*part*, 142 S. Ct. 1106 (2022) (Tymkovich, T., dissenting) (discussing problems

with Unwelcome Clause's broad language); *Chelsey Nelson Photography*,

2022 WL 3972873, at *26 (same).

After all, most topics covered by the Unwelcome Clause reach

"controversial" and "sensitive" subjects like "the Confederacy, sexual

orientation and gender identity … and minority religions." *Janus*, 138 S. Ct.

at 2476. If core political and religious speech on controversial topics like

these are barred, the ban is simply too broad. The 11th Circuit recently

agreed. *See Speech First,* 32 F.4th at 1125 (by banning "verbal…conduct"

based on protected traits, antidiscrimination policy was overbroad and forbid

statements like "a man cannot become a woman because he 'feels' like one"

and "the Palestinian movement is anti-Semitic.") (cleaned up).

---

[14] *See* CNI Church News Ireland, *Mary McAleese condemns Catholic Church for 'intrinsically evil' teachings on homosexuality* (July 1, 2020), http://www.churchnewsireland.org/news/irish-uk-news/mary-mcaleese-condemns-catholic-church-for-intrinsically-evil-teachings-on-homosexuality/.

[15] *See* Karen Stoltznow, *Why is it so offensive to say 'all lives matter'?*, The Conversation (Jan. 13, 2001), https://theconversation.com/why-is-it-so-offensive-to-say-all-lives-matter-153188.

[16] *See* Ethan Alter, *Gloria Steinem and Julie Taymor explain why the 'Karen' meme is sexist*, Yahoo (Sept. 30, 2020), https://www.yahoo.com/now/gloria-steinem-julie-taymor-karen-meme-sexist-162810020.html.

So for good reasons, courts have invalidated the Unwelcome Clause's language as facially problematic. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (ban on "objectionable" publications vague and overbroad); *Brush & Nib Studio, LC v. City of Phoenix*, 418 P.3d 426, 442–43 (Ariz. Ct. App. 2018) (striking "unwelcome," "objectionable," "unacceptable," and "undesirable" language); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 215 (3d Cir. 2001) (Alito, J.) (invalidating policy covering "any unwelcome verbal" conduct as overbroad); *Armstrong v. D.C. Pub. Library*, 154 F. Supp. 2d 67, 77–80 (D.D.C. 2001) (invalidating regulation denying library access to patrons with an "objectionable" appearance as vague and overbroad). *Cf. Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 577–78 (6th Cir. 2013) (ban on advertisements that "discourage" protected classes would be overbroad). This court should too.

*Vagueness*: Not only is the Unwelcome Clause overbroad, it is also vague and unclear. The Due Process Clause requires laws to give persons of ordinary intelligence an understanding of what is allowed and forbidden. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Laws must also provide "minimal guidelines to govern law enforcement." *Id.* at 358 (cleaned-up). A "more stringent vagueness" test applies to laws that regulate speech. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).

24

The Unwelcome Clause fails this standard. The law does not define "unwelcome, objectionable, or unacceptable." Code § 406.201(b). That keeps public accommodations like the bookstore guessing. V.C. ¶¶ 157–59. Indeed, the bookstore wants to more fully explain on its website its religious beliefs about gender identity in the future (as it has addressed abortion), but the store has no way to know whether the Clause bans such discussions. *Id.* Businesses in Jacksonville cannot possibly know which statements about protected traits violate this Clause and which don't. Almost any critical statement about a protected trait could. That in turn deters protected speech and gives officials discretion to play favorites. See *People for Ethical Treatment of Animals, Inc. v. Shore Transit*, 580 F. Supp. 3d 183, 198 (D. Md. 2022) (ban on "objectionable" advertisements facially vague).

## Conclusion

Language matters. When the government can force citizens to use language favoring one view in a public debate while silencing others, we all lose. George Orwell warned of this over 70 years ago, seeing the damage a Ministry of Truth could do when mandating its preferred terms like goodthink, crimethink, and oldspeak. We do well to hear that warning today. Queen of Angels respectively ask this Court to grant its requested injunction, let it choose its desired language and express its desired views, and stop the ongoing violation of its constitutional rights.

Respectfully submitted this 22nd day of February, 2023.


Jonathan A. Scruggs*                    By: *s/ Patrick Leduc*
Arizona Bar No. 030505                   Patrick Leduc
Henry W. Frampton, IV*                   Florida Bar No. 964182
South Carolina Bar No. 75314             **Law Offices of Patrick Leduc, P.A.**
**Alliance Defending Freedom**           4809 E. Busch Blvd., Suite 204
15100 N. 90th Street                     Tampa, Florida 33617
Scottsdale, Arizona 85260                (813) 985-4068
(480) 444-0020                           (813) 333-0424 Fax
(480) 444-0028 Fax                       Patrick.Leduc@ymail.com
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

Rachel Csutoros*
Virginia Bar No. 97783
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, Virginia 20176
(571) 707-4655
(571) 707-4656 Fax
rcsutoros@ADFlegal.org

*Counsel for Plaintiff*

**Pro Hac Vice Admission Forthcoming*

26

**Certificate of Service**

I hereby certify that on the 22nd day of February, 2023, I electronically filed the foregoing document with the Clerk of Court using the ECF system. The foregoing document will be served via private process server with the Summons and Complaint to all defendants.

By: *s/ Patrick Leduc*
Patrick Leduc
Florida Bar No. 964182
**Law Offices of Patrick Leduc, P.A.**
4809 E. Busch Blvd., Suite 204
Tampa, Florida 33617
(813) 985-4068
(813) 333-0424 Fax
Patrick.Leduc@ymail.com

27