UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THE CATHOLIC STORE, INC.,
d/b/a QUEEN OF HEARTS
CATHOLIC BOOKSTORE,

     Plaintiff,

v.                            CASE NO.: 3:23-cv-192-TJC-MCR

CITY OF JACKSONVILLE,

     Defendant.

_____/

## CITY OF JACKSONVILLE'S MOTION TO DISMISS

The City of Jacksonville (the City) moves to dismiss Plaintiff's Complaint (Doc. 1) under Florida Rules of Civil Procedure 12(b)(1) and (6) for lack of justiciability and failure to state a claim upon which relief can be granted. Plaintiff's claims are not ripe, it lacks standing to bring its claims, and the Complaint is a shotgun complaint.

## MEMORANDUM OF LAW

### I. Factual Allegations in the Complaint

Plaintiff brings this action to challenge the constitutionality of the Jacksonville Human Rights Ordinance (HRO) as it pertains to public accommodations such as retail stores. Plaintiff is a privately-owned Catholic bookstore that sells books, apparel, home décor, sacramental and liturgical

items, and jewelry for a profit.  Doc. 1, ¶ 8.  Plaintiff alleges that "Queen of Angels serves everyone, regardless of race, religion, sex, sexual orientation, gender identity, or any other protected status."  *Id.*, ¶ 79.  However, the bookstore maintains that it cannot use pronouns or titles that do not align with an individual's biological sex because it would violate the divine command against bearing false witness.  *Id.*, ¶¶ 85-86.

When asked to use pronouns or titles that do not align with a customer's biological sex, Queen of Angels employees wish to respectfully decline and instead intentionally, respectfully, and consistently use a form of address that does not contradict the customer's biological gender, such as the customer's first or last name.  *Id.*, ¶ 88.   However, Plaintiff does not allege that any such request by a customer has ever occurred at its store, and it is unclear how the store would presume to determine biological sex or how this "policy" would work in practice.

Queen of Angels wishes to adopt its current pronoun and title practice into a formal, written policy.  *Id.*, ¶ 96.  However, the owner of the bookstore, Christie DeTrude, only realized recently that the HRO "threatened Queen of Angels' ability to run its business according to its faith…"  *Id.*, ¶ 131.  She believes the language in Section 406.201(b) of the Code ("It shall be unlawful to publish…[a] communication…to the effect that…the patronage of such

2

person is unwelcome…") prohibits her from publishing the pronoun policy because it could make someone feel "unwelcome." *Id.*, ¶ 155.

Plaintiff also believes that publishing its pronoun policy could violate the portion of the HRO that prohibits the denial of services to a person because of his or her gender identify. *Id.*, ¶¶ 149, 152, 153. Plaintiff further believes that publishing its pronoun policy would violate the prohibition against denying the privileges of public accommodation to someone based on gender identity. *Id.*, ¶¶ 143-44, 146-47. While Plaintiff alleges it "fears" violating these provisions of the HRO, it also concedes that no one has actually complained of being denied any of the privileges or any access to Plaintiff's store because of its pronoun policy. In fact, it merely alleges that posting its pronoun policy on its blog "would *possibly* make someone feel unwelcome, objectionable, or unacceptable." *Id.*, ¶ 155 (emphasis added).

Critically, there are no allegations that Plaintiff has ever been the subject of a complaint by any individual, or that it has even been threatened with such a complaint. There are no allegations that Plaintiff has ever actually refused to use certain pronouns in relation to any customer at the store, nor is there an allegation that anyone has ever made a demand concerning their gender identity. Indeed, the bookstore has existed–and by its own admission, thrived–under the current version of the HRO for three years, but now claims

it "fears" a complaint could occur in the future and is asking the Court to enjoin such speculative action before (and if) it ever occurs.

There is no justiciable as-applied claim in this case, and the Code is constitutional on its face.  In short, this lawsuit did not arise out of an actual case or controversy, nor out of any complaint or threatened complaint under the HRO.  As alleged, no one has ever been denied access or patronage at the bookstore based on gender identity.  This case arose out of the bookstore owner contemplating the possible applications of the City's anti-discrimination policies in public accommodations based on alleged news events and cases, laws, and regulations in other jurisdictions.  *See* Doc. 1, ¶¶ 125-31 (alleging things the owner has "heard about" concerning gender pronoun usage, with no allegation concerning the Plaintiff bookstore).

Plaintiff sues the City under four counts:  Count I is under the First Amendment: Free Speech, Association, Press, and Assembly; Count II is also under the First Amendment for Free Exercise of Religion; Count III is pursuant to the Florida Statutory Free Exercise of Religion; and Count IV is under the Fourteenth Amendment's Due Process Clause for Vagueness.  None of the four counts incorporate any of the Complaint's preceding 231 allegations.  For the following reasons, Plaintiff does not state a claim and the Complaint should be dismissed.

4

## II. The Motion to Dismiss Standard

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint should be dismissed if the well-pleaded allegations, assumed to be true and viewed in the light most favorable to the plaintiff, do not plausibly entitle the plaintiff to relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*, *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009).  In other words, legal conclusions must be supported by plausible factual allegations.  *See Iqbal*, 556 U.S. at 679.

Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679. "[B]are assertions" which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, should therefore be rejected as "conclusory and not entitled to be assumed true."  *Id.* at 681; *see also S.D. v. St. Johns County School Dist.*, No. 3:09-cv-250-J-20TWM, 2009 WL 2381287, at *2 (M.D. Fla.

July 29, 2009).  Here, Plaintiff's claims are conclusory and wholly speculative, and the Complaint should be dismissed.

## III.   Plaintiff's Complaint Should Be Dismissed

### A. Plaintiff's Claims Are Not Justiciable

For a claim to be justiciable, it must be ripe, and the party bringing the claim must have standing.  Here, Plaintiff's claims are not ripe because no complaint has been filed against Plaintiff, and Plaintiff has not suffered any injury in fact.  In addition, Plaintiff has failed to exhaust all administrative remedies before seeking court action.

#### 1. Plaintiff's Claims Are Not Ripe

Plaintiff challenges the HRO "as applied" to it.  However, Plaintiff does not allege the City has ever enforced the HRO against Plaintiff or investigated any complaint against Plaintiff.  Instead, Plaintiff asks this Court to issue an advisory opinion as to whether it violates the HRO by publishing and enforcing it pronoun policy.  Accordingly, Plaintiff's claims are not ripe.

Plaintiff seeks a determination that the HRO as it "arguably" *applies* to its desire to decline certain pronouns and publish its "policy" on its blog is unconstitutional.  *See* Doc. 1 at ¶¶ 216, 218, 221, 227, 231.  Plaintiff alleges it asked the City to preemptively "disavow" this application of the HRO to its store.  Doc. 1, ¶ 196.  However, there are no allegations that Plaintiff has ever been subject to an HRO complaint, has been threatened with a complaint, or

has even encountered a customer asking its employees to use any specific pronoun.   In short, Plaintiff is seeking relief for conduct that has never occurred and may never occur.   This Court should decline such advisory legal advice and speculative relief.

The majority of Plaintiff's allegations set forth an "as-applied" challenge to the City's HRO.   But the HRO has never been applied to the bookstore. Thus, Plaintiff's claims are not "fit" for adjudication by the Court because they "require 'speculation about contingent future events.'"   *Beeline Ent. Partners, Ltd. v. Co. of Orange*, 243 F. Supp. 2d 1333, 1339 (M.D. Fla. 2003), quoting *Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001) (citations omitted); *see also Speech First, Inc. v. Schlissel*, 939 F.3d 756. 764 (6th Cir. 2019) (reasoning that to have standing, a litigant must allege more than just a subjective "chill" on its speech; there must be a concrete harm in that enforcement has occurred or is imminent). Because Plaintiff's allegations are "as-applied" challenges to the HRO's application to public accommodations and the gender identity category of discrimination, they are not ripe as the bookstore must exhaust its administrative remedies under the Code, if a complaint ever occurs.[1]   While

---

[1] *See* Code §§ 406.401, 406.409.   The enforcement of the HRO would involve an individual complaint to the JHRC, followed by an investigation and determination of probable cause (or no probable cause), or a request for notice of right to sue and *then* the initiation of a court action.   None of this has occurred here, and thus any purported injury is speculative.

Plaintiff may wish to avoid the purportedly "lengthy, broad, and intrusive investigatory process," (Doc. 1, ¶ 183), Plaintiff is no different from any other party who would like a court to tell it if its action would violate the law.  Were this Court to do so, however, it would be issuing an advisory opinion.  Instead, Plaintiff must wait until its claims are ripe.

Plaintiff has attempted to create a case or controversy where none currently exists.  In fact, Plaintiff alleges its owner decided to pursue this action only after thinking about the HRO in relation to current events and other lawsuits.  Doc. 1, ¶¶ 125-131.  Until an actual individual makes a complaint under the Code, there is no way to know what the factual circumstances of that complaint would be or if the HRO would be applied in an unconstitutional way.[2]  Therefore, the Complaint fails to state a claim upon which relief may be granted because Plaintiff's claims are not ripe.

### 2. Plaintiff Does Not Have Standing

Plaintiff also lacks standing.  "The party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan v. Defenders of Wildlife, Inc.*, 504 U.S. 555, 561 (1992).  The "irreducible constitutional minimum of standing

---

[2] For example, it is hard to imagine the HRO being violated simply by using a customer's first or last name.  Moreover, Plaintiff's alleged "policy" is that it will decline to use pronouns it believes do not conform with a person's biological sex, after being asked to do so.  This begs another question:  how will employees know if the requested pronoun does not conform to a person's biological sex?  This sensitive question merits no further discussion, but it further demonstrates the highly speculative nature of the possible chain of future events.

contains three elements." *Id.* at 560. "First, the plaintiff must have suffered an 'injury in fact'–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent', not 'conjectural' or 'hypothetical.'" *Id.* (citations omitted). Moreover, "[f]or an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Spokeo v. Robbins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1); *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198 (11th Cir. 2021).

Second, "the injury has to be 'fairly…trace[able] to the challenged action of the defendant, and not…the result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61, (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38).

Plaintiff lacks standing for two reasons:  it has failed to exhaust its administrative remedies, and it has not suffered an injury in fact. "A plaintiff making an as-applied challenge to the constitutionality of a statute or ordinance must exhaust his or her administrative remedies before seeking relief in the courts." *Beeline Ent. Part., Ltd.*, 243 F.Supp. at 1339, citing *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997) and

*Pittman v. Cole* 267 F.3d 1269, 1279-80 (11th Cir. 2001).  Plaintiff has never been the subject of an HRO complaint or investigation and has no actual injury.

Enforcement of the HRO is invoked only when someone files a complaint with the Jacksonville Human Rights Commission (JHRC).  *See* Code §§ 406.401, 406.409.  Only when it receives a complaint does the JHRC initiate an investigation and determine if probable cause exists for a violation of the HRO.  Code §§ 406.402, 406.405, 406.406.[3]  There are no allegations in the Complaint that a complaint has ever been made to the JHRC regarding Plaintiff's pronoun usage.  It is purely speculative whether a complaint would ever be made and what the outcome of such an investigation would be.  Regardless, Plaintiff makes no allegations that it has exhausted the administrative remedies provided for in the Code, and therefore, it does not have standing to bring this court action.

Similarly, since Plaintiff makes no allegations that a complaint has been made against it for its pronoun usage or for any other reason, it has not suffered an injury in fact.  While Plaintiff alleges its speech has been chilled as result of the HRO, "[t]he mere fact that plaintiffs 'allege [ ] a First Amendment

---

[3] Plaintiff alleges that Chapter 60 of the Code could allow the JHRC to initiate its own investigation, but that is not the process under Chapter 406 with regard to public accommodations.  It is unlikely at best that the JHRC would ever independently investigate without an individual complaining of discrimination.  In any event, there is no allegation that the bookstore has ever been investigated for anything.

chilling effect and shivers in court does not thereby establish a case or controversy.'" *Beeline Ent. Part., Ltd.*, 243 F.Supp. 2d at 1338 quoting *National Student Ass'n v. Hershey*, 412 F.2d 1103, 1114 (D.C. Cir. 1969). Plaintiff does not allege any legally cognizable chilling effect since by its own admission it continues to serve all customers.  Doc. 1, ¶ 79.  Furthermore, as discussed more fully below, the HRO does not compel Plaintiff to engage in any speech.  Therefore, Plaintiff lacks standing, the Complaint should be dismissed.

## B. Plaintiff has Failed to State a Claim Upon Which Relief May be Granted

Plaintiff fails to state a claim under the First or Fourteenth Amendments or under Florida's Free exercise of religion statute because Plaintiff is not prohibited from engaging in any speech, nor is it being compelled to engage in any speech in violation of its religious beliefs.

To the extent Plaintiff is facially challenging the HRO under the First Amendment, the Complaint fails to state a claim for relief.  Admitting that it accommodates all customers, Plaintiff nonetheless claims that the HRO violates its constitutional and statutory rights, and chills it from exercising its constitutional and statutory rights.  Doc. 1, ¶ 210.  Unless the store uses words it does not wish to use, it has a "substantial risk" of violating the HRO.  *Id*., ¶ 156.  Putting aside that this is again an "as applied" claim, Plaintiff cites

inapposite discrimination laws and regulations from other jurisdictions, many of which concern other types of discrimination and contain "guidance" as to the use of preferred pronouns in other contexts.   Nothing on the face of Jacksonville's HRO concerns the use of pronouns or any expression by store employees, nor does it prohibit or "force" them to engage in any speech; instead, the Code simply requires equal access and patronage at public accommodations.   That is facially constitutional.

### 1. The HRO is not aimed at employees' expression.

Plaintiff has failed to state a claim for relief under any of its counts because the City is not compelling Plaintiff to engage in any speech nor is it prohibiting any speech Plaintiff wishes to engage in.   The HRO furthers the City's compelling interest in preventing discrimination in access to and patronage of public accommodations, such as hotels, theaters, and stores open to the public.   It has nothing to do with restricting employees' expression or compelling any speech, except to the extent it prevents establishments open to the general public from communicating a discriminatory message that certain categories of individuals cannot patronize the establishment.[4]   Plaintiff has fully allowed such access and patronage.

---

[4] For example, the most historically invidious of such a communication would be a sign reading "Whites Only," or in this case, "No Transgender People Allowed."   *See Telescope Media Group v. Lucero*, 936 F.3d 740, 757 (8th Cir. 2019) (reasoning that anti-discrimination laws can regulate activities and require an employer to take down

The City is furthering its compelling interests in such anti-discrimination regulations. These interests drove the passage of the HRO nearly twenty years ago. The HRO does not address employee speech on its face, nor does it concern public opinions or criticisms on controversial topics. There is no allegation that it has never been applied that way. Certainly, "it is almost always possible to hypothesize a less restrictive alternative to any ordinance," but courts should not be put in the position of having to decide what alternative language best meets a city's compelling needs, "a task courts are ill-equipped to perform." *Assoc. of Community Organizations for Reform Now v. Town of East Greenwich*, 453 F. Supp. 2d at 394, 406 (D.R.I. 2006) (discussing the safety hazards of door-to-door solicitation.)

On its face the City's HRO simply furthers a policy of providing "access to public accommodations for all people within the City." Code § 406.102. To the extent access to public accommodations includes restrictions on communications (such as signs or publications telling certain individuals they are not welcome in a store), that restriction is constitutional, and the HRO is not aimed at any particular content of employee speech, and certainly not at any particular viewpoint. The HRO furthers a *compelling* City interest in

_____

a sign reading "white applicants only," without violating the First Amendment). The HRO has existed with numerous categories of discrimination since 2004, without any issues as to what it prohibits or its scope. Plaintiff's request to strike the entire HRO is disproportional to the injury it claims to have suffered.

preventing discrimination by ensuring all individuals are welcome in public accommodations. The Court can construe it in this constitutional manner. Anti-discrimination laws throughout the country serve the same compelling and constitutional purpose.

### 2.    The HRO is not overbroad or void for vagueness.

Plaintiff alleges that the City's prohibition on publication, circulation, issuance or display of communications stating that patronage of certain individuals is "unwelcome, objectionable, or unacceptable" violates the First Amendment because it is overbroad and vague. However, the HRO's provisions covering public accommodations, appropriately construed by the Court in light of the City's explicitly stated legislative intent, are neither unconstitutionally overbroad nor vague. An individual of ordinary intelligence is given fair notice of the scope of these provisions—to prevent businesses from communicating discrimination in access to and patronage of public accommodations. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). This is all the clarity that is required.

For an ordinance to be facially overbroad under the First Amendment, its overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Okla.*, 413 U.S. 601, 615 (1973). This means that "a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible

14

applications." *New York v. Ferber*, 458 U.S 747, 771 (1982). "The mere fact that one can conceive of some impermissible application of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Recreational Devel. of Phoenix, Inc. v. City of Phoenix*, 83 F. Supp. 2d 1072, 1086 (D. Ariz. 1999), quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). The law needs to be *substantially* overbroad to be unconstitutional.

Here, as Plaintiff acknowledges, the HRO, a twenty-year-old anti-discrimination law similar to others throughout the country, covers only communications that protected individuals' *patronage* at a public accommodation is unwelcome, objectionable, or unacceptable. Doc. 1, ¶ 150. This is not substantially overbroad and does not give the City "unbridled discretion to apply the Unwelcome Clause in a way that discriminates." *Id.*, ¶ 243. Any person of ordinary intelligence should understand this.[5] Instead, construed in a constitutional manner, the HRO on its face applies only to discriminatory communications preventing access or patronage at a public establishment. Plaintiff admits it does neither (and has never been accused of doing so). The HRO is not unconstitutionally overbroad on its face.

---

[5] In fact, this prohibition has existed for many protected individuals within the City since 2004, with no confusion and no litigation.

A law is only unconstitutionally vague where its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  In evaluating whether a law is vague, courts inquire as to whether "'people of ordinary intelligence' would fail to understand" what the law requires. *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1382 (11th Cir. 2019), citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  As the Supreme Court has reasoned, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Id.* at 110.  Nor can every possible avenue of violation be predicted and legislated.  Courts should construe language according to its plain meaning and decide whether it "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Roth v. United States*, 354 U.S. 476, 491 (1957).  The Court should use reason and common sense in construing the provisions, and any possible over-definition of what the provisions could conceivably cover can be dealt with and cured through "case-by-case analysis and review." *Hobbs v. County of Westchester*, 2003 WL 21919882 *7 (S.D.N.Y. 2003).

Here, Plaintiff contends the words "unwelcome, objectionable, or unacceptable" in the HRO are unconstitutionally vague and can be used with "unbridled discretion" to discriminate against content, viewpoints, and acts. Doc. 1, ¶ 243. However, these terms only apply to communications that a business wishes to refuse or deny a person access, or that the person's

patronage as a customer is unwelcome.  Code § 406.201(b).  "Accommodations" and "patronage" are words in the Code that qualify the words "unwelcome, objectionable, or unacceptable."  This is sufficiently clear and narrow to tell a person of ordinary intelligence what is prohibited.  It does not ban speech on topics of public debate.

If the Court finds any of the HRO's words ambiguous, it can also turn to the City's legislative intent to determine its meaning and intent.  *See, e.g., In re Racing Svcs., Inc.*, 779 F.3d 498, 503 (8th Cir. 2015) (reasoning that court can review legislative history if law is ambiguous or adhering to its strict letter would lead to absurd results).  Here, the City's "declaration of policy" explicitly states that the goal is to provide "access to public accommodations for all people within the City."  Code § 406.102.  Moreover, the Court, whenever possible, should construe laws so as to avoid unconstitutionality.  *See Backpage.Com*, 881 F. Supp. 2d at 1276.  As discussed above, the City's legislative intent was to provide for access to public accommodations without discrimination.  While certain statements, beyond the denial of access or patronage at public establishments, may be hurtful or critical, those are not within the purpose of the HRO as to public accommodations.

Properly construed on their face, the Code provisions preventing discrimination in public accommodations exist for the common-sense important interest in allowing equal access to public facilities for all

Jacksonville residents.  As such, Plaintiff has failed to state a claim for which relief may be granted because taking all the well plead allegations in the Complaint as true, there is no legally cognizable claim under the First or Fourteenth Amendments or under Florida's Freedom of Religion statute because the HRO is neither vague nor overbroad, nor does it compel or prohibit any speech.

### C. The Complaint is a Shotgun Complaint

Shotgun pleadings are pleadings that "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Shotgun pleadings include complaints that plead "conclusory, vague, and immaterial facts" and complaints that plead two or more causes of action in one count. *Id.*; *see also Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n. 8 (11th Cir. 2001) ("The failure of the plaintiff to identify [ ] claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun pleading").

Shotgun complaints are normally dismissed. "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings[…].  They waste scarce judicial resources, 'inexorably broaden[ ] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[ ] the public's respect for the

courts.'" *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (citations omitted).  Courts also have inherent authority to dismiss shotgun complaints with prejudice after giving the plaintiff one chance to replead and remedy the deficiencies.  *Id.* at 1296; *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1357-58 (11th Cir. 2018) (district courts should strike shotgun pleadings and require repleading, if counsel can, in good faith, make the representations required by Rule 11(b)).

The Eleventh Circuit has further emphasized that shotgun pleadings must be dismissed because they are calculated to confuse the opposing party and the court by masking theories for relief.  *See, e.g., Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).  In addition, shotgun pleadings require unnecessary discovery and should therefore be dismissed before discovery starts.  *See id.* at 1329.

Plaintiff's Complaint is a shotgun complaint for two reasons:  it is fifty pages long with 244 separate allegations, many of which are irrelevant to its four causes of actions, and 213 of the allegations appear to be irrelevant since they are not incorporated into any of the four causes of action.  Having to determine which allegations apply to which cause(s) of action would result in "unnecessary discovery".  The Complaint also contains numerous allegations that have no bearing on Plaintiff's claims under the First and Fourteenth Amendment.  For example, the Complaint begins with two and a half pages of

unnumbered paragraphs constituting an "Introduction" with what Plaintiff perceives as an overview of its case.

There are also multiple irrelevant paragraphs discussing the types of products Plaintiff prefers to sell (Doc. 1, ¶¶ 30-32), and how the employees prefer to spend their time at work (Doc. 1, ¶¶ 36-59).  Plaintiff then spends twenty-one paragraphs discussing what jurisdictions other than Jacksonville have done about the use of pronouns.  Doc. 1, ¶¶ 103-124.  These allegations are irrelevant to the HRO at issue.  Those laws speak for themselves, and the City should not be required to answer those allegations or engage in discovery regarding them.

Despite spending *forty-two pages* making a wide variety of allegations, Plaintiff does not incorporate any of those allegations into any of its four counts.  Presumably, none of those allegations were then necessary.  Its failure to incorporate any of the allegations then also leads to confusion within each count.   For example, all four counts refer to the "Privilege, Denial, and Unwelcome Clauses," yet those terms are not defined within the counts.  While the City can assume those terms have the meaning ascribed in paragraphs 143, 149, and 150, doing so does not "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1321–23.  In addition, Count III refers to allegations "noted above" (Doc. 1, ¶233) and "as alleged above" (Doc. 1, ¶ 237), but does not

identify which specific allegations to which it is referring.  Again, the City should not have to guess which allegations Plaintiff intended to incorporate into Count III and engage in unnecessary discovery.

Nor should the City have to assume that all 213 preceding allegations are incorporated into each of the counts.  In fact, to do so would violate the Eleventh Circuit's prohibition against incorporating every preceding allegation into every count.  *See id*.  Since many of the 213 allegations are irrelevant to Plaintiff's claims, Plaintiff should identify which specific allegations are relevant to each of the four counts and omit the irrelevant allegations. Plaintiff's Complaint should be dismissed as a shotgun pleading.

## IV.    Conclusion

For the reasons stated above, Plaintiff's Complaint should be dismissed with prejudice.  Not only are Plaintiff's claims not ripe, but Plaintiff lacks standing and has failed to state a claim upon which relief may be granted. Finally, Plaintiff's Complaint is a shotgun pleading.

## Local Rule 3.01(g) Certification

The undersigned certifies that the City has conferred with opposing counsel by email regarding the substance of this Motion, and the parties do not agree on the resolution of the Motion.

Respectfully submitted,

**OFFICE OF GENERAL COUNSEL**

*/s/ Laura Boeckman*
**CRAIG D. FEISER**
Assistant General Counsel
Florida Bar No. 164593
CFeiser@coj.net; BOsburn@coj.net
**LAURA J. BOECKMAN**
Assistant General Counsel
Florida Bar No.: 527750
LBoeckman@coj.net;
THawkins@coj.net
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
(904) 255-5100 (Telephone)
(904) 255-5120 (Facsimile)
*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th day of March, 2023, a true and correct copy of the foregoing was filed with the Clerk of Court for uploading to the CM/ECF system which will send notice of electronic filing to all counsel of record who are participants in the Court's ECF filing system.  Plaintiff's lead local counsel is Patrick Leduc, Esq., 4809 E. Busch Blvd., Suite 204, Tampa, FL 33617.

*/s/   Laura Boeckman*
*Counsel for Defendant*

22