**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **The Catholic Store, Inc. d/b/a Queen of Angels Catholic Bookstore,**<br><br>*Plaintiff*,<br><br>v.<br><br>**City of Jacksonville**,<br><br>*Defendant.* | Civil Action No: 3:23-cv-00192-TJC-MCR<br><br>**Motion for Summary Judgment on the Religious Organization Exemption** |

# Table of Contents

Table of Authorities ........ ii

Introduction ........ 1

Factual Background ........ 2

Legal Standard ........ 8

Argument ........ 8

I. Queen of Angels is a "religious corporation" under the plain meaning of the statute. ........ 9

A. Queen of Angels is a "religious corporation" based on the plain meaning of both "religious" and "corporation." ........ 9

B. The context and structure of Title VII make it clear that religious for-profits like Queen of Angels qualify for the religious exemption. ........ 11

II. Queen of Angels is a "religious corporation" under the tests articulated by the Eleventh Circuit and other courts ........ 14

III. The constitutional-avoidance canon compels a broad reading of the religious exemption to protect for-profit religious entities. ........ 18

A. Applied to religious organizations, Jacksonville's law tramples constitutional protections for religious speech and exercise. ........ 18

B. The bookstore's for-profit status is irrelevant to the constitutional inquiry because for-profits have constitutional rights, and religious speech is protected regardless of corporate form. ........ 20

C. Construing the religious-corporation exception broadly avoids those problems by exempting religious companies like Queen of Angels from Jacksonville's law. ........ 22

Conclusion ........ 24

## Table of Authorities

**Cases**

*303 Creative, LLC v. Elenis*,
143 S. Ct. 2298 (2023) .......... 6, 7, 21

*Alabama v. Bozeman*,
533 U.S. 146 (2001) .......... 12, 13

*Allen v. Board of Public Education for Bibb County*,
495 F.3d 1306 (11th Cir. 2007) .......... 8

*Bostock v. Clayton County*,
140 S. Ct. 1731 (2020) .......... 12

*BP P.L.C. v. Mayor & City Council of Baltimore*,
141 S. Ct. 1532 (2021) .......... 9

*Brush & Nib Studio, LC v. City of Phoenix*,
448 P.3d 890 (Ariz. 2019) .......... 21

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) .......... 13, 14, 20, 22

*CSX Corp. v. United States*,
18 F.4th 672 (11th Cir. 2021) .......... 9

*Florida Gulf Coast Building & Construction Trades Council v. N.L.R.B.*,
796 F.2d 1328 (11th Cir. 1986) .......... 18, 19

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
515 U.S. 557 (1995) .......... 21

*K Mart Corporation v. Cartier, Inc.*,
486 U.S. 281 (1988) .......... 17

*Killinger v. Samford University*,
113 F.3d 196 (11th Cir. 1997) .......... 14, 15, 23

*LeBoon v. Lancaster Jewish Community Center Association*,
503 F.3d 217 (3d Cir. 2007) .......... 13, 16, 17

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998) .......... 13

*Miami Herald Publishing Company v. Tornillo*,
418 U.S. 241 (1974) .......... 21

*N.L.R.B. v. Catholic Bishop of Chicago*,
440 U.S. 490 (1979) .......... 9, 22, 23

*Perrin v. United States*,
444 U.S. 37 (1979) .......... 9, 10

*Spencer v. World Vision, Inc.*,
633 F.3d 723 (9th Cir. 2011) .......... 11, 12

*Telescope Media Group v. Lucero*,
936 F.3d 740 (8th Cir. 2019) .......... 21

*United States v. Atlantic Research Corporation*,
551 U.S. 128 (2007) .......... 9

*United States v. Butler*,
297 U.S. 1 (1936) .......... 12

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
425 U.S. 748, 761 (1976) .......... 20, 21

*Wallace v. Brownell Pontiac-GMC Company*, Inc.,
703 F.2d 525 (11th Cir. 1983) .......... 8

*Wirth v. College of Ozarks*,
26 F. Supp. 2d 1185 (W.D. Mo. 1998), *aff'd* 208 F.3d 219 (8th Cir. 2000) .......... 16

*Wisconsin Central Ltd. v. United States*,
201 L. Ed. 2d 490 (2018) .......... 9, 10

**Statutes / Rules / Regulations**

Jacksonville, Florida Code § 406.104(k) .................................................... 9, 20

Jacksonville, Florida Code § 406.201(a) ...................................................... 5, 6

Jacksonville, Florida Code § 406.201(b) ............................................... 5, 19, 20

Jacksonville, Florida Code § 406.302(f) ....................................................... 6, 20

Jacksonville, Florida Code § 406.409(b) ..................................................... 7, 20

42 U.S.C. § 2000e-1(a) ......................................................................... 7, 9, 12, 24

Federal Rules of Civil Procedure 56 ..................................................................8

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, at 167, 174 (2012).......................................................................... 17

Emily S. Fields, *VII Divided by Four: The Four-Way Circuit Split over the Title VII "Religious Organization" Exemption*, 63 Wayne L. Rev. 55, (2017) ........................................................................................................ 14

*Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/religious .......................................................................... 10

*Start a Business*, Division of Corporations, https://dos.myflorida.com/sunbiz/start-business/............................................ 10

## Introduction

Queen of Angels is a Catholic bookstore seeking to spread its faith to the Jacksonville community. The bookstore desires to speak messages that promote its faith, and to decline to speak messages that violate it. For example, Queen of Angels wants to explain on its website why it cannot use pronouns that conflict with biology, and it wants to promote Catholic teaching on gender and human sexuality.

But Jacksonville's public-accommodations law chills its religious speech. The law calls what the store wants to say gender-identity discrimination. And it vaguely prohibits speech that someone might claim makes them feel unwelcome. Nearly anyone can begin enforcement proceedings against the bookstore, leading to costly and intrusive investigations, injunctions, punitive damages, and uncapped fines.

Thankfully, Jacksonville's law contains an exemption for religious businesses like Queen of Angels. Drawing from Title VII of the Civil Rights Act of 1964, "religious corporations" are exempt from Jacksonville's law for allegations of sexual-orientation or gender-identity discrimination. This exemption applies to Queen of Angels because its business has a religious character.

Unfortunately, Jacksonville refuses to concede that this exemption applies to Queen of Angels or to otherwise disavow enforcement against the

bookstore for its religious speech and exercise. So, reasonably fearing prosecution, Queen of Angels must continue chilling its constitutionally protected speech and activities.

To remedy this, Queen of Angels seeks a declaration that it qualifies for the religious exemption. It is entitled to summary judgment on this issue because the record evidence lines up one way: Queen of Angels is a "religious corporation" under Title VII and thus under Jacksonville's law too. This Court should issue a declaratory judgment saying the religious exemption will resolve all of the bookstore's claims and properly avoid the constitutional issues raised by Jacksonville's regulation of speech and religious exercise.

## Factual Background

Queen of Angels is a for-profit company with a distinctly religious character. Christie DeTrude, the sole owner, strives for the bookstore to be a "beacon" of Catholicism to the Jacksonville community. Verified Am. Compl. ¶¶ 6, 8, 17–18, Doc. 44, PageID.518, 520.

The bookstore's religious purpose is set forth in its corporate articles: it is a "Catholic Store selling books and gifts." *Id.* ¶ 10, PageID.519; Ex. A to Verified Am. Compl., Doc. 44-1, PageID.578. And this purpose is infused in everything it does, from selecting inventory that promotes and upholds the Catholic faith, to discussing the faith with customers who have questions, to

helping customers connect with a local church, to visibly observing specific prayer times during the workday. *Id.* ¶¶ 7, 20, 24–29 36–45, 50–55, PageID.518, 520–25; Decl. of Christie DeTrude in Supp. of Pl.'s Prelim. Inj. Mot. ¶¶ 6–36, Doc. 4-2, Page.ID.113–17. Store employees solicit prayer requests from customers and pray over them daily. *Id.* ¶¶ 51–55, PageID.524–25; Decl. ¶¶ 41–44, PageID.118. And they serve the local church by stocking liturgical supplies. *Id.* ¶¶ 7, 25–26, PageID.518, 521; Decl. ¶¶ 30–32, PageID.116. They also accept donations of no-longer-used Catholic items and, in turn, donate those items to a local church or charity that can use them. *Id.* ¶ 60, PageID.525; Decl. ¶¶ 37–40, PageID.117–18. And they promote Catholicism through faith-oriented community events and by blogging about Catholic beliefs. *Id.* ¶¶ 56–59, 66–74, PageID.525–27; Decl. ¶¶ 45–47, 82–89, PageID.118–19, 126–27. Just looking at the store reveals its religious purpose: its marquee reads "Catholic Store," and it has wall-to-wall displays of distinctly Catholic books and devotional items.







Anyone visiting would immediately know that Queen of Angels is a religious place.

Queen of Angels believes that Catholic teaching on gender and sexuality is life-giving and promotes human flourishing. Verified Am. Compl.

¶ 91, PageID.530. The bookstore desires to share and explain its beliefs on these issues, recognizing that Catholic teaching is often poorly understood and misconstrued. *Id.* ¶¶ 92–95, PageID.530–31. So it wishes to adopt a formal policy on handling requests for non-biological pronouns, and to explain how that policy fits with Catholic teaching in an article that it will post on its blog and hand out in the store. *Id.* ¶¶ 97–100, PageID.531; Ex. B to Verified Am. Compl., Doc. 44-2, PageID.581; Ex. C to Verified Am. Compl., Doc. 44-3, PageID.583–84. And it wants to publish additional blog posts that discuss Catholic beliefs concerning gender and human sexuality that do not specifically touch on the pronoun policy. *Id.* ¶¶ 101–103, PageID.531–32.

But Jacksonville's law forbids public accommodations from engaging in this kind of speech. Two provisions are key. *First*, the Denial Clause makes it unlawful to "publish" or "display" a "communication" which suggests that "accommodations" or "advantages" will be denied because of someone's gender identity. Jacksonville, Fla. Code § 406.201(b). *Second*, the Unwelcome Clause makes it unlawful to "publish" or "display" a "communication" which suggests that the "patronage of such person is unwelcome, objectionable, or unacceptable" because of a person's gender identity.[1] *Id.*

[1] The bookstore originally challenged the Accommodation Clause as well, which makes it unlawful to "refuse, withhold or deny" any "services," "advantages," or "privileges" of a place of public accommodation based on sexual orientation or gender identity. Jacksonville

Both provisions chill Queen of Angels' speech and religious exercise. Adopting its pronoun policy, circulating the policy to its employees, and posting about the policy on its blog and in the store would violate both clauses. Verified Am. Compl. ¶¶ 146–159, PageID.543–45. And the Unwelcome Clause is so vague and overbroad that any blog posts about Catholic teaching on gender and human sexuality risks running afoul of it. *Id.* ¶¶ 160–162, PageID.546.

The store cannot lightly risk violating Jacksonville's law. Enforcement is so diffuse that even an internet troll can start the process. *Id.* ¶¶ 166–69, 186, PageID.547–48, 551. And the enforcement process itself is onerous, intrusive, and costly to a small business like Queen of Angels. *Id.* ¶ 171, PageID.548–49. What's more, the potential penalties are crushing, including injunctions restricting Queen of Angels from openly speaking about its religious beliefs and paying uncapped actual and punitive damages. *Id.* ¶¶

---

Code § 406.201(a). But this Court ruled that the bookstore lacked standing to pursue that challenge, and, respecting the finality of the Court's decision on the issue, the bookstore did not re-plead that claim. Verified Am. Compl. ¶ 146, n.14, PageID.543. As set forth in the original Verified Complaint, the bookstore challenged the Accommodation Clause because the Biden Administration and numerous jurisdictions have interpreted similar language to compel the use of preferred pronouns. Verified Compl. ¶¶ 103–124, Doc. 1, PageID.18–25. And the Supreme Court recently noted that Colorado's version of the Accommodation Clause was so intertwined with its version of the Denial and Unwelcome clauses that a decision on one is a decision on all. *303 Creative, LLC v. Elenis*, 143 S. Ct. 2298, 2319 (2023) (challenge to communication provision of public accommodations law "hinges on" challenge to accommodation provision). Regardless, because the religious exemption in Jacksonville's law applies equally to the Accommodation, Denial, and Unwelcome Clauses, a declaration that the bookstore is exempt will protect the bookstore from prosecution under the Accommodation Clause. Jacksonville Code § 406.302(f).

178–85, PageID.550–51; Jacksonville Code § 406.409(b). This is exactly the kind of risk a business owner doesn't have to take before vindicating her constitutional rights in court. *303 Creative*, 143 S. Ct. at 2313 (holding that business owner facing potential remedial training, compulsory report, and fines had standing).

Here, it is all the clearer that the store shouldn't have to chill its speech or religious exercise because Jacksonville's law provides an exemption from the sexual-orientation and gender-identity provisions for any "religious corporation, association or society," as that term is used in Section 702 of Title VII of the Civil Rights Act of 1964. Jacksonville Code § 406.104(k); 42 U.S.C. § 2000e-1(a). Because it is a "religious corporation" under Title VII Queen of Angels should be exempt. Verified Am. Compl. ¶¶ 143–45, PageID.542.

But because the City will neither agree that Queen of Angels is a qualifying "religious corporation" nor otherwise disavow enforcing the law against the bookstore, that risk remains. Throughout the litigation, Jacksonville has had ample opportunities in its briefing and in person before this Court to disavow enforcement against the bookstore on constitutional or statutory grounds. *Id.* ¶¶ 198–201, PageID.553. It has declined at every turn. *Id.*

## Legal Standard

Under Federal Rule of Civil Procedure 56, a motion for summary judgment may be submitted "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party." Fed. R. Civ. P. 56 note (Note to Subdivison (a)). The rule allows a summary-judgment motion before discovery is conducted. *Wallace v. Brownell Pontiac-GMC Co.*, Inc., 703 F.2d 525, 526–27 (11th Cir. 1983). Subsection (f)(3) allows the court to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56. Summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

## Argument

The undisputed facts show that Queen of Angels is a "religious corporation" exempt under Title VII and Jacksonville's law for three reasons. *First*, the plain meaning of the phrase "religious corporation" easily encompasses the bookstore. *Second*, because of its clear religious character, the bookstore qualifies under the religious-exemption tests articulated by the Eleventh Circuit and other courts. And *third*, interpreting Jacksonville's law to exempt Queen of Angels avoids the significant constitutional

problems with a contrary interpretation. For each of these reasons, the Court should grant the bookstore's motion and enter a declaration that the bookstore is a "religious corporation" exempt under Title VII and thus under Jacksonville's law.

## I. Queen of Angels is a "religious corporation" under the plain meaning of the statute.

Title VII's text, context, and structure demonstrate that Queen of Angels is an exempt religious corporation.

### A. Queen of Angels is a "religious corporation" based on the plain meaning of both "religious" and "corporation."

Jacksonville's law, incorporating Section 702 of Title VII, exempts a "religious corporation, organization or society" from the relevant portions of its public-accommodations law. Jacksonville Code § 406.104(k); 42 U.S.C. 2000e-1(a). On its face, an entity qualifies for the exemption if it is both "religious" and a "corporation." Queen of Angels is both.

When interpreting a statute, first "[w]e start with the text." *CSX Corp. v. United States*, 18 F.4th 672, 679 (11th Cir. 2021). "Statutes must 'be read as a whole,'" *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 135 (2007) (citation omitted), and courts have "no license to give statutory exemptions anything but a fair reading." *BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1538 (2021) (citation and internal quotation marks omitted). The court's "job is to interpret the words" of a statute "consistent with their

'ordinary meaning ... at the time Congress enacted the statute.'" *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

Applying these principles to Queen of Angels, it is plainly a "religious corporation." Starting with "corporation," Queen of Angels filed its Articles of Incorporation with Florida's Department of State on December 29, 2016, satisfying Florida's requirements to create a corporation. Doc. 44-1, PageID.577.[2]

Moving to "religious," Queen of Angels is religious under any ordinary understanding of the word. Merriam-Webster defines "religious" as "relating to or manifesting faithful devotion to an acknowledged ultimate reality or deity."[3] Here, the bookstore's purpose is to be a "beacon" for Catholicism in the community. Verified Am. Compl. ¶ 17, PageID.520. The bookstore's name reflects one of the devotional titles of Mary, the mother of Jesus. *Id.* ¶ 19, PageID.520. The bookstore's mission is "to strengthen the faith of those within the Church and spread the Gospel to people outside the Church." *Id.* ¶ 21, PageID.520. Queen of Angels wants to "magnify God's goodness" by serving its customers from the community. *Id.* ¶ 23, PageID.520. The bookstore sells primarily Catholic products (*id.* ¶ 24, PageID.520), it

---

[2] *Start a Business*, Division of Corporations, https://dos.myflorida.com/sunbiz/start-business/.

[3] *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/religious.

conducts prayer in the store (*id.* ¶¶ 36–41, 51–53, PageID.522–24), and it holds itself out as a Catholic business to the community (*id.* ¶ 20, PageID.520). In short, everything the bookstore does revolves around its devotion to its faith. As this Court pointed out, "If Queen of Angels Catholic Bookstore is not a religious organization or a religious corporation as defined in this code, what would be?" Tr. of Oral Arg. of Mot. for Prelim. Inj. Hr'g at 8 (transcript to be released Aug. 30, 2023). Even Jacksonville seems to recognize that the bookstore is "sectarian in nature" and "its sole purpose" is to promote its Catholic faith. City of Jacksonville's Resp. to Court's Endorsed Order (Doc. 36), Doc. 39, PageID.424.

So the record evidence amply demonstrates that Queen of Angels is a "corporation," and it is "religious." Under Title VII's plain text, which is incorporated into Jacksonville's law, it is a "religious corporation" entitled to an exemption.

### B. The context and structure of Title VII make it clear that religious for-profits like Queen of Angels qualify for the religious exemption.

Despite the clear religious character of some for-profit businesses, like small religious bookstores, some courts have been skeptical that a for-profit corporation can qualify for the Section 702 exemption. *See Spencer v. World Vision, Inc.*, 633 F.3d 723, 734 (9th Cir. 2011) (O'Scannlain, J., concurring) (calling whether the employer is a nonprofit "especially significant"); *id.* at

748 (Kleinfeld, J., concurring) (opining that an organization should not qualify for the exemption if it "engage[s] primarily or substantially in the exchange of goods or services for money beyond nominal amounts").

Again, start with the text. The statute specifically exempts religious "corporation[s]," along with religious "association[s]" and "societ[ies]." 42 U.S.C. § 2000e-1(a) The use of "corporations" in this context shows a clear intention to include for-profit entities within the scope of the exemption. Associations and societies are typically non-profits; corporations are typically for-profit. Confining the exemption to non-profits—or imposing stringent requirements on a for-profit beyond simply demonstrating its religious character—would ignore Congress' decision to include "corporations" along with "associations" and "societies." Congress could have easily limited the exemption to "non-profit associations and organizations" had it so desired. *United States v. Butler*, 297 U.S. 1, 65 (1936) (per Roberts, J.) (When Congress uses a word it "cannot be meaningless, else [it] would not have been used.").

Further, Congress offered no qualifiers to its use of the term "corporation" beyond that they be "religious." And "when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020). So "we must assume that *every*" such religious corporation "triggers" the exemption. *Alabama v.*

*Bozeman*, 533 U.S. 146, 154 (2001) (citation omitted) (holding speedy trial statute made "no distinction among different kinds" of prisoner arrivals, so "every prisoner arrival … trigger[ed]" its provisions). All that is required for a corporation to trigger the exemption is a showing of its religious character.

Notably, Congress specifically enumerated that the statute "shall" not apply to religious corporations. The word "shall" is a "command." *Id*. at 153. It "normally creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998). So when the exemption says that Title VII "shall not apply," there is no "implicit exception, for it is absolute." *Bozeman*, 533 U.S. at 153.

The Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.* is instructive on the ability of for-profit businesses to have a religious character. There, the Court ruled that "[b]usiness practices that are compelled or limited by the tenets of a religious doctrine" constitute the "exercise of religion" protected by the Religious Freedom Restoration Act, even when a large for-profit company like Hobby Lobby engages in them. 573 U.S. 682, 709–710 (2014). And "organizations with religious and charitable aims might organize as for-profit corporations because of the potential advantages of that corporate form." *Id.* at 712. After all, people can organize corporations for "any lawful purpose," including a religious one. *Id.* at 713. Thus, as *Hobby Lobby* acknowledges, nothing prohibits a for-profit

corporation from exercising its religious beliefs, and its religious exercise is as protected under federal law as any other type of entity's. *Id.* at 712.

In the same way, for-profits like Queen of Angels can adopt a religious purpose and character and thereby qualify as a "religious corporation" under Title VII. Nothing in Title VII's text, context, or structure limits Section 702 to non-profits, and *Hobby Lobby* confirms that for-profits can and do engage in religious exercise. Because Queen of Angels is "religious" under any ordinary understanding of that term, and because nothing in Title VII limits the exemption to non-profits, it qualifies for the exemption. And this Court should so declare.

## II. Queen of Angels is a "religious corporation" under the tests articulated by the Eleventh Circuit and other courts.

Queen of Angels also qualifies as a religious corporation under the Eleventh Circuit's test for Title VII's religious exemptions, and under tests set forth by other courts.

Begin with the Eleventh Circuit. To determine whether an organization qualifies under § 702's religious exemption, the Eleventh Circuit looks wholistically at whether the organization's purpose is primarily religious. *Killinger v. Samford Univ.*, 113 F.3d 196, 199 (11th Cir. 1997); *see* Emily S. Fields, *VII Divided by Four: The Four-Way Circuit Split over the Title VII "Religious Organization" Exemption*, 63 Wayne L. Rev. 55, 63–65 (2017) (whether its purpose is "sufficiently religious."). Rather than

enumerating specific factors, the Eleventh Circuit looks to the organization's "general purpose, principles, and tendencies." *Killinger*, 113 F.3d. at 199–200. And it rejects the notion that § 702 requires "some kind of rigid sectarianism" to qualify for the religious corporation exemption. *Id.* at 199.

Queen of Angels easily satisfies *Killinger's* wholistic inquiry. The bookstore's purpose is to promote the Catholic faith, and its Articles of Incorporation reflect its identity as a Catholic store. Verified Am. Compl. ¶¶ 10, 17, PageID.519–520; Doc. 44-1, PageID.577. It upholds Catholic principles in everything it does, particularly in its interactions with customers. *Id.* ¶¶ 20, 48–49, PageID.520, 524. The bookstore's faith foundation infuses all its activities—daily prayer (*id.* ¶¶ 36–41, PageID.522–23), soliciting the prayer requests of customers (*id.* ¶¶ 51–55, PageID.524–25), selling distinctly Catholic products (*id.* ¶¶ 7, 24–25, 27–30, PageID.518, 520–21), substantively interacting with customers about the Catholic faith (*id.* ¶¶ 42–50, PageID.523–24), hosting faith-oriented community events (*id.* ¶¶ 56–59, PageID.525), and communicating the faith through its blog (*id.* ¶¶ 63–74, PageID.526–27). These characteristics amply show that it is sufficiently religious. *Killinger*, 113 F.3d. at 199–200 (listing religious characteristics).

Queen of Angels also qualifies as a religious corporation under tests from other circuits as well. For example, the Eighth Circuit adopted the

reasoning of a district court that, like *Killinger*, wholistically reviewed whether a college was sufficiently religious. *Wirth v. Coll. of Ozarks*, 26 F. Supp. 2d 1185, 1187 (W.D. Mo. 1998), *aff'd* 208 F.3d 219 (8th Cir. 2000) (adopting district court opinion). The court looked at the college's founding, its incorporation, and its mission. *Id.* Queen of Angels satisfies this kind of inquiry because of its clear religious founding (Verified Am. Compl. ¶¶ 17–20, PageID.520), the inclusion of its religious purpose in its Articles of Incorporation (*id.* ¶ 10, PageID.519), its mission is to be a "beacon" for Catholicism in the community (*id.* ¶ 17, PageID.520), and its many religious activities that support that mission (*id.* ¶¶ 36–59, PageID.522–25).

Queen of Angels meets the Third Circuit's test too. That court considers nine factors when deciding whether an entity is a religious corporation: (1) whether it operates for a profit, (2) whether it produces a secular product, (3) whether its pertinent documents list a religious purpose, (4) whether it is owned or affiliated with a religious entity, (5) whether a formal religious entity operates in management, (6) whether it holds itself out to the public as religious, (7) whether it includes prayer or other worship, (8) whether it includes religious instruction in its curriculum, (9) whether its membership is coreligionist. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 226 (3d Cir. 2007). "[A]ll significant religious and secular

characteristics must be weighed to determine whether the corporation's purpose and character are primarily religious." *Id.*

Queen of Angels has nearly all of these factors. *See supra* § I.A. And the ones it doesn't have are bound up in its for-profit status: it is a for-profit corporation owned and operated by an individual, Christie DeTrude, and not a church or other ministry. Verified Am. Compl. ¶¶ 6–11, PageID.518–19. But these factors cannot be dispositive and do not detract from the bookstore's religious character.[4] If they alone disqualified the bookstore, then no for-profit could ever qualify—and, as discussed above, that cannot be right under the statute's text.

Queen of Angels is a religious corporation based on any reasonable weighing of the *LeBoon* factors. The bookstore produces primarily religious products through its "Catholic-oriented books, apparel, home décor, sacramental and liturgical items." *Id.* ¶ 7, PageID.518. The bookstore lists its purpose to sell Catholic goods in its Articles of Incorporation and holds itself out to the public as a Catholic bookstore. *Id.* ¶ 10, PageID.519; Doc. 44-1, PageID.577. Indeed, its marquee sign reads "Catholic Store." Photograph

[4] The context and structure of Title VII supports a finding that Queen of Angels qualifies for the religious exemption. In determining the meaning of a statute, courts look at "the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). They "consider the entire text" giving "every word and every provision" effect. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, at 167, 174 (2012).

of Storefront, *supra* at 4. It supports local churches and local priests. Verified Am. Compl. ¶¶ 26, 44, PageID.521, 523. It sells books that teach the Catholic faith, and its staff direct customers to materials likely to help them learn and grow in the faith. *Id.* ¶¶ 27–30, 50, PageID.521, 524. The store's employees take time to attend mass before work, visibly pray during the workday, collect prayer requests, seek to bring customers to the faith, and pray with their customers. *Id.* ¶¶ 35–41, 51–55, PageID.522–25. Thus, the great weight of the *LeBoon* factors are on the side of Queen of Angels qualifying for the religious exemption.

In sum, Queen of Angels qualifies as a religious corporation under Title VII's religious exemption under the Eleventh Circuit's test and tests set out by other circuits.

## III. The constitutional-avoidance canon compels a broad reading of the religious exemption to protect for-profit religious entities.

The constitutional-avoidance canon buttresses the conclusion that Queen of Angels qualifies for the Title VII religious exemption, as any contrary reading would raise serious First Amendment concerns.

### A. Applied to religious organizations, Jacksonville's law tramples constitutional protections for religious speech and exercise.

"[A]n Act of Congress [should] not be construed to violate the Constitution if any other possible construction remains available." *Fla. Gulf*

*Coast Bldg. & Constr. Trades Council v. N.L.R.B.*, 796 F.2d 1328, 1331 (11th Cir. 1986). This canon should guide the Court's interpretation of § 702—and thereby Jacksonville's law—if there is a construction that "presents a significant risk that the First Amendment will be infringed." *N.L.R.B. v. Cath. Bishop of Chicago*, 440 U.S. 490, 502 (1979).

And there is. If Queen of Angels is not accorded a religious exemption, then Jacksonville's law presents a serious risk to its First Amendment rights of religious exercise and free speech. The bookstore seeks to run its business according to its deeply held Catholic beliefs. Verified Am. Compl. ¶ 20, PageID.520. This means that Queen of Angels cannot deny or contradict the Catholic faith when speaking to customers. *Id.* ¶ 82, PageID.528. The bookstore believes that God created each person male and female and biological sex is immutable. *Id.* ¶ 84, PageID.529. Thus, Queen of Angels wishes to publish its pronoun policy in efforts to speak openly with its customers. *Id.* ¶ 97, PageID.531. It also wants to post a blog on its website explaining its Catholic beliefs concerning gender and sexuality. *Id.* ¶ 98, PageID.531.

Both the Denial and Unwelcome Clauses hinder Queen of Angels' abilities to operate the bookstore according to these beliefs. *See* Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. (Pl.'s MPI), 15–17, Doc. 4-1, Page.ID.99–101. These clauses prohibit the bookstore from publishing its desired statements

on Catholic views of human sexuality and gender identity. Jacksonville, Fla. Code § 406.201(b). And the vaguely worded Unwelcome Clause bans the bookstore from even discussing its views on its website because someone may view the message as "unwelcom[ing]." *Id.*

If this Court declares Queen of Angels is a religious corporation under Jacksonville's Code §§ 406.302(f) and 406.104(k) (and under § 702 of Title VII), the bookstore would be exempt from § 406.201 as it relates to gender identity and sexual orientation. This would protect Queen of Angels from the law's threats to its desired speech and religious exercise.

**B. The bookstore's for-profit status is irrelevant to the constitutional inquiry because for-profits have constitutional rights, and religious speech is protected regardless of corporate form.**

Queen of Angels' for-profit status has no bearing on whether Jacksonville's law violates its constitutional rights, and thus should have no bearing on whether it qualifies for an exemption that avoids the constitutional problems with the law. As discussed above, the Supreme Court's decision in *Hobby Lobby* clarified that for-profit status is irrelevant to whether an organization engages in the "exercise of religion." 573 U.S. at 714. This constitutional freedom does not dissipate in the face of receiving profits for their services. *Id.* And it is "beyond serious dispute" that speech is "protected even though it is carried in a form that is 'sold' for a profit."

*Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976); *see 303 Creative LLC*, 143 S. Ct. at 2313 (the government cannot "compel anyone who speaks for pay on a given topic"). There is a long history of First Amendment cases holding that businesses do not lose their freedom of speech just because they operate for a profit.

This makes sense. If the government can tell Queen of Angels what to say, what to think, and what to sell its customers because it operates for a profit, then any speaker or business could be compelled to speak. *See* Pl.'s MPI, PageID.76. And if a business' expression is not protected because it receives a profit for its services, the government could force all manner of businesses "to speak what they do not believe on pain of penalty." *303 Creative LLC*, 143 S. Ct at 2314. And that is not the law. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573, 575 (1995) (parade organizers "choose the content" of their speech and are "more than a passive receptacle" for someone else's message); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) ("A newspaper is more than a passive receptacle or conduit for news, comment, and advertising."); *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 753 (8th Cir. 2019) (rejecting conduit argument for film studio); *Brush & Nib Studio, LC v. City of Phoenix*, 448 P.3d 890, 911–12 (Ariz. 2019) (rejecting conduit argument for art studio).

Jacksonville cannot control Queen of Angels' speech just because it operates for a profit. The bookstore holds conscience rights, and Jacksonville's law should permit it to display its religious beliefs about sexual orientation and gender identity. *See* Pl.'s MPI at 16–17, PageID.100–101; *cf. Hobby Lobby*, 573 U.S. at 714 (noting free-exercise cases suggest "for-profit corporations possess [free-exercise] rights."). It would therefore be inappropriate to use the bookstore's for-profit status to keep it from qualifying for a religious exemption that would avoid these very problems.

### C. Construing the religious-corporation exception broadly avoids those problems by exempting religious companies like Queen of Angels from Jacksonville's law.

The constitutional problems with Jacksonville's law are easy to avoid—at least for religious businesses—by properly construing the religious-corporation exemption to include them. And that's exactly what the constitutional-avoidance canon is designed to accomplish. When faced with two possible readings and applications of a statute, the constitutional-avoidance canon makes clear that the reading which does not violate constitutional protections must prevail.

In *Catholic Bishop*, the Supreme Court applied this canon to a similar case in determining how a labor law applied to religious schools. 440 U.S. at 501. The Court kept the National Labor Relations Board from exercising jurisdiction over the religious schools because it would give "rise to serious

constitutional questions." *Id*. Allowing the Board to regulate the religious schools' hiring practices required the Board to judge the sincerity of the schools' religious beliefs when "their challenged actions were mandated by their religious creeds." *Id*. at 502. The "very process of inquiry" would be too burdensome on the schools' religious rights. *Id*. So the Court read the law narrowly to avoid these constitutional issues. *Id*. at 507.

To avoid constitutional issues with Queen of Angels, this Court should read § 702 to protect the business' speech and exercise, all of which are motivated by its sincerely held faith. *Id*. In prior cases, this circuit has done exactly that. Circling back to *Killinger*, when Samford University demoted a professor for theological issues, the Eleventh Circuit read § 702 "to avoid the First Amendment concerns." *Killinger*, 113 F.3d at 201. The court held that the "exemption allows religious institutions to employ only persons whose beliefs are consistent with the employer's when the work is connected with carrying out the institution's activities." *Id*. at 200.

The same is true here. Under Jacksonville's law, the exemption allows religious businesses to speak and operate according to their faith in the fraught areas of sexual orientation and gender identity. To avoid encroaching on foundational First Amendment rights of free speech and exercise, this Court should construe the religious exemption to apply to Queen of Angels.

## Conclusion

Title VII's plain text shows Queen of Angels is a religious corporation that qualifies for the religious exemption. There is nothing in the statute suggesting that a for-profit entity cannot receive the exemption. And reading Section 702 to cover religious businesses like Queen of Angels properly avoids the constitutional problems with any contrary reading of the statute. This Court should grant Queen of Angels' motion for summary judgment and issue a declaration that:

- Queen of Angels qualifies as a "religious corporation" as that term is used in Section 702 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1(a); and
- Queen of Angels is therefore exempt from Section 406 of the Jacksonville Code with regard to any allegation of discrimination based on sexual orientation or gender identity, Jacksonville Code § 406.302(f).

Respectfully submitted this 28th day of July, 2023.

Patrick Leduc
Florida Bar No. 964182
Law Offices of Patrick Leduc, P.A.
4809 E. Busch Blvd., Suite 204

*s/ Henry W. Frampton, IV*

Jonathan A. Scruggs*
Arizona Bar No. 030505

Tampa, Florida 33617
(813) 985-4068
(813) 333-0424 Fax
Patrick.Leduc@ymail.com

Henry W. Frampton, IV*
South Carolina Bar No. 75314
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

Rachel Rouleau*
Virginia Bar No. 97783
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, Virginia 20176
(571) 707-4655
(571) 707-4656 Fax
rrouleau@ADFlegal.org

*Counsel for Plaintiff*

**Certificate of Service**

I hereby certify that on the 28th day of July, 2023, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record who are registered users of the ECF system.

By: *s/ Henry W. Frampton, IV*
Henry W. Frampton, IV
South Carolina Bar No. 75314*
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: 480–444–0020
hframpton@ADFlegal.org

*Attorney for Plaintiff*
* Admitted *Pro Hac Vice*