UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THE CATHOLIC STORE, INC.,
d/b/a QUEEN OF HEARTS
CATHOLIC BOOKSTORE,

     Plaintiff,

v.                            CASE NO.: 3:23-cv-192-TJC-MCR

CITY OF JACKSONVILLE,

     Defendant.

_____/

**CITY OF JACKSONVILLE'S RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
ON THE RELIGIOUS ORGANIZATION EXEMPTION (DOC. 45)**

Defendant, the City of Jacksonville (the City), pursuant to this Court's Order of June 9, 2023 (Doc. 43), hereby responds to Plaintiff's Motion for Summary Judgment on the Religious Organization Exemption (Doc. 45).

Although the Court ordered the parties to limit the summary judgment arguments to the religious exemption analysis under the City's Code language, the Plaintiff bookstore spends much of its 31-page motion arguing the merits of its claims concerning the constitutionality of the City's Human Rights Ordinance (HRO), which, as previously admitted, has never been applied to the bookstore. The Court already denied preliminary injunctive relief to the Plaintiff, and Plaintiff's motion should have nothing to do with its religious

beliefs regarding "preferred pronouns" or whether the City's HRO allegedly infringes on Plaintiff's First Amendment rights.  The Court simply wanted additional dispositive briefing on the "threshold" religious exemption issue (which was first raised by the Court and would be dispositive of this case), not extensive discussion on the merits of the constitutionality of the HRO.   Doc. 43 at 13-14.

Plaintiff states that the City has "refused to concede" that the religious exemption applies to the bookstore, even though Plaintiff *never requested or argued for an exemption* from the HRO's public accommodations requirements—not in its original "demand letter" to the City and not in its initial complaint.  Motion at 1.[1]  Certainly, if Plaintiff wished to claim that its proposed policy would not violate the HRO because the bookstore is exempt as a "religious corporation," the burden would be on the Plaintiff at the outset to provide evidence to the City that the requirements for the religious exemption were met.

Instead, it was the Court that first raised the religious exemption issue and ordered the parties to brief and argue that issue at the Court's May 15,

---

[1] Plaintiff argues that the City will not agree that the exemption applies.  Motion at 7.  To the contrary, the Court did not have evidence of the exemption at the preliminary injunction hearing, other than the Plaintiff's Verified Complaint, but the City did agree that the factors recognized by federal courts as indicating that an entity is a "religious corporation" are present in this case.  (Doc. 39).  The Court decided that more briefing on this limited issue was necessary.

2023 preliminary injunction hearing.  Without a Court order, this issue would never have been raised by the Plaintiff.  It therefore makes no sense to suggest that the City should have conceded the exemption or disavowed its HRO based on an argument Plaintiff never made and never supported with evidence.

Plaintiff argues that the bookstore is entitled to the religious exemption under the Code as a matter of law which, it states correctly, would lead to the Court's proper avoidance of all constitutional issues and the complete dismissal of this case.  Motion at 2.  The City does not in any way concede that the HRO is unconstitutional on its face or as hypothetically applied to the bookstore, but it agrees that in this limited circumstance involving this one particular, wholly religious bookstore, the Code exemption applies.  The relevant factors indicate that this unique Plaintiff is a "religious corporation."

As it did in its original complaint, Plaintiff again highlights the many reasons why its Verified Amended Complaint (Doc. 44) demonstrates that it meets nearly all of the judicially recognized factors making it a religious corporation under the Code.  While Plaintiff is a for-profit bookstore, it has a "distinctly religious character" and a solely Catholic purpose, sells nothing but Catholic related goods, conducts in-store prayer every day, serves the local church and promotes the Catholic faith in all it does, and "has wall-to-wall displays of distinctly Catholic books and devotional items."  Motion at 2-3.  The City has no reason to dispute these facts.  The City agrees that "[a]nyone

3

visiting would immediately know that Queen of Angels is a religious place." Motion at 4.

Neither the City's Code nor federal law defines "religious corporation," however, federal cases provide guidance as to the relevant factors to consider and balance on a case-by-case basis.  Religious and secular characteristics of the business are weighed to determine "whether the corporation's purpose and character are primarily religious." *E.E.O.C. v. Townley Engineering & Mfg. Co.*, 859 F.2d 610, 618-19 (9th Cir. 1988).  Factors can include (but are not limited to): whether the business is for profit; whether its articles of incorporation state a religious purpose; whether it sells secular or religious products; whether it is affiliated with or supported by a church; whether it supports religious institutions; whether it holds itself out as secular or sectarian; and whether it regularly includes prayer or worship in its activities. *See id.*; *see also LeBoon v. Lancaster Jewish Comm. Center Ass'n*, 503 F.3d 217, 226-231 (3d Cir. 2007); *Spencer v. World Vision, Inc.*, 570 F. Supp. 2d 1279, 1283-84 (W.D. Wash. 2008); *Ginsburg v. Concordia Univ.*, 2011 WL 41891 *2-4 (D. Neb. 2011).  Plaintiff satisfies almost all of these factors.

Plaintiff is a for-profit corporation selling only Catholic-oriented goods, but other than that one factor, in every other way it is distinctly a "religious corporation."  Plaintiff spends many pages in its original and amended complaints and previously denied injunction motion describing its

4

Catholic faith and services, including: it serves the Diocese (Doc. 1 at ¶ 15); it is a "beacon of Catholic faith to the community" (*Id.* at ¶ 17); it is distinctly Catholic and these beliefs shape the entire business, including its website (*Id.* at ¶¶ 18-20); its mission is to spread the Gospel (*Id.* at ¶ 21); it only promotes the Catholic faith in what it sells to the public (*Id.* at 23-32); it "views itself as an extension of the church" and is "a distinctly Catholic business" (*Id.*); it conducts Catholic prayers for employees and the public (*Id.*); it promotes its sectarian faith online (*Id.*); it passes prayers along to local clergy and churches (*Id.*); and it has converted at least one customer to Catholicism (*Id.* at 9-13; Doc. 4-2 at 3-9).  Plaintiff reiterates most of these facts in its motion for summary judgment, and the City has no reason to dispute these claims.[2]

In short, Plaintiff is not a secular business owned by religious individuals; rather, it is governed and defined by its Catholic faith.  As this Court reasoned, if the Plaintiff "is not a religious organization or religious corporation as defined in the code [i.e., despite its for-profit status], what would be?" Motion at 11.  The City agrees with this analysis, while also recognizing that Plaintiff is a rare for-profit business entitled to the City's "religious

---

[2] Plaintiff again confirms its religious focus and sectarian nature in its responses to the City's First Set of Requests for Admission and corresponding answers to the City's First Set of Interrogatories, attached hereto as Exhibits A and B, respectively. Plaintiff again admits that it regularly engages in acts of evangelism and prayer, views itself as an extension of the Catholic Church, and that its sole mission is to promote the Catholic Faith.

corporation" exemption.  While it sells religious items for profit,[3] the bookstore is sectarian in nature, and by its own allegations, its sole purpose is to espouse, support, and promote the Catholic faith.

Almost all other factors favor Plaintiff being a "religious corporation" and thus exempt from the HRO as to gender identity.  This Court's determination that the factors weigh in favor of the exemption in Section 406.302(f) of the Code, in relation to sexual orientation and gender identity only, would apply only to Plaintiff and have no precedential effect on any other for-profit business or other entity.  *See Townley*, 859 F.2d at 618 (reasoning that "each case must turn on its own facts," and "[a]ll significant religious and secular characteristics must be weighed to determine whether the corporation's purpose and character are primarily religious"); *LeBoon*, 503 F.3d at 227 (stating that "not all factors will be relevant in all cases, and the weight given each factor may vary from case to case.").

---

[3] The City agrees with the Plaintiff that the "for profit" factor alone does not determine whether the corporation is religious in nature.  *See, e.g., Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).  The purpose listed on Plaintiff's Articles of Incorporation is "Catholic Store Selling Books and Gifts."  Plaintiff's allegations in its complaint and motion make clear that the items for sale are religious in nature and meant to comport with, promote, and further the Catholic faith and Catholic church.  The fact that the bookstore sells religious goods for a profit, in much the same way other corporations sell non-religious goods to make a profit, does not mean Plaintiff is not a "religious corporation."  In fact, it demonstrates the Plaintiff should be entitled to such a designation.

Moreover, applying the exemption in this case means that the HRO could never apply to Plaintiff's proposed activities involving gender identity, and thus Plaintiff would have no standing to challenge the constitutionality of the HRO.  Plaintiff admits that if the Court finds the exemption applies, it could avoid reaching the merits of any constitutional issue in this case.  The Court need not address any of Plaintiff's claims in its Verified Amended Complaint. This case should therefore be dismissed with prejudice.

Respectfully submitted,

**OFFICE OF GENERAL COUNSEL**

*/s/ Craig D. Feiser*
**CRAIG D. FEISER**
Assistant General Counsel
Florida Bar No. 164593
CFeiser@coj.net; BOsburn@coj.net
**LAURA J. BOECKMAN**
Assistant General Counsel
Florida Bar No.: 527750
LBoeckman@coj.net;
BOsburn@coj.net
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
(904) 255-5100 (Telephone)
(904) 255-5120 (Facsimile)
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of August, 2023, a true and correct copy of the foregoing was filed with the Clerk of Court for uploading to

7

the CM/ECF system which will send notice of electronic filing to all counsel of record who are participants in the Court's ECF filing system.  Plaintiff's lead local counsel is Patrick Leduc, Esq., 4809 E. Busch Blvd., Suite 204, Tampa, FL 33617.

*/s/   Craig D. Feiser*
*Counsel for Defendant*